EXPERIENCE C. SIBLEY, administratrix, *vs.* QUINSIGAMOND NATIONAL BANK & others.

Worcester.     Oct. 8, 1880; Jan. 27. — Nov. 27, 1882.     LORD, J., absent.

A., who owned stock in a national bank, transferred it to B. to hold in trust for him, and a new certificate was issued to B., in which the stock was declared to be transferable only on the books of the bank by him or his attorney, on the surrender of the certificate.     The bank had no notice of the trust.     B. indorsed upon his certificate an assignment to A. and delivered it to him.     The stock continued to stand in the name of B. on the books of the bank, and he voted on it and received the dividends thereon, which he paid to A., and acted as shareholder.     B. became insolvent, and an assignee in insolvency was appointed.     The stock had been previously attached by a creditor of B., and an order was afterwards made, on the application of the assignee and the creditor, under the Gen. Sts. c. 118, § 45, that the lien created by the attachment should continue.     A. afterwards offered to surrender the certificate to the bank, and demanded a transfer of the stock to himself.     The by-laws of the bank provided that the stock should be assignable only on its books, and that a transfer-book should be kept in which all assignments and transfers of stock should be made.     *Held,* on a bill in equity by A. against the bank to compel a transfer of the stock, that the stock did not pass to the assignee in insolvency of B.; that the attachment was dissolved; and that A. was entitled to the transfer.

BILL IN EQUITY, filed October 7, 1879, against the Quinsigamond National Bank, a corporation having its place of business in the city of Worcester in this Commonwealth, Daniel A. Hawkins, and Charles A. Hill, the assignee in insolvency of the estate of said Hawkins, to compel the transfer to the plaintiff of seven shares of the capital stock of the defendant bank.

The case was heard upon the pleadings and agreed facts, before a single justice of this court, who ordered a decree to be entered for the defendants. The plaintiff appealed to the full court. The facts appear in the opinion.

The case was argued at the bar in October 1880, by *F. T. Blackmer*, for the plaintiff, and by *E. B. Stoddard*, for the defendants; and was afterwards submitted on briefs by the same counsel.

W. ALLEN, J. The plaintiff, as administratrix of Rhoda Wheelock, seeks a transfer to herself of certain stock of a national bank, standing on its books in the name of Daniel A. Hawkins. It appears that the stock was purchased by Mrs. Wheelock in 1865, and the certificate issued to her; that in 1866 she transferred it to Hawkins, and a new certificate was issued to him, and the stock has ever since stood in his name on the books of the bank, and he has voted on it at meetings of the stockholders, and received the dividends from the bank, and acted as shareholder. The stock was transferred by Mrs. Wheelock to Hawkins solely that he might hold it in trust for her; and, when he received the certificate from the bank, he indorsed upon it an assignment to Mrs. Wheelock, and delivered the certificate and assignment to her, and she has held them ever since; he received the dividends for her, and paid them over to her. The bank had no notice of the trust.

The by-laws of the bank provide that the stock shall be assignable only on the books of the bank, and that a transfer-book shall be kept in which all assignments and transfers of stock shall be made; and in the certificate to Hawkins the stock is declared to be transferable only on the books of the bank by him or his attorney, on the surrender of the certificate. The plaintiff has offered to surrender the certificate, and has demanded a transfer of the stock to herself as the administratrix of Mrs. Wheelock.

The defendant Hill contends that he is entitled to the stock, as assignee of the estate of Hawkins, under the insolvent laws of this Commonwealth; and it appears that, upon the petition of Hawkins, insolvency proceedings were instituted, and his estate was duly assigned to the defendant Hill, before the demand made by the plaintiff upon the bank, and before the bank had

notice of the trust. The question presented is, whether the stock passed to the assignee by virtue of the assignment.

As an assignment under the insolvent laws operates by force of the statute, and not as a conveyance from the debtor, the terms of the statute, as applied to the subject matter, must determine what will pass by the assignment. The language of the statute is, " The assignment shall vest in the assignee all the property of the debtor real and personal which he could have lawfully sold, assigned or conveyed, or which might have been taken on execution upon a judgment against him." Gen. Sts. *c.* 118, § 44. Property held in trust by a debtor is not property of his which he could have lawfully sold, assigned or conveyed, or which might have been taken on execution upon a judgment against him. There is no provision in the insolvent law that property held in trust by the debtor shall not pass by the assignment, and there is no occasion for such a provision. Such property is not the property of the debtor within the meaning of the act, and does not come within its provisions as property which will pass by the assignment. *Holmes* v. *Winchester, ante,* 140. *Chace* v. *Chapin,* 130 Mass. 128. *Hunnewell* v. *Lane,* 11 Met. 163. To enable the defendant to hold the stock in question as property of Hawkins, which could be taken on execution against him, it must be brought within some exception to the general rule of the common law, either by the effect of some statute, or by some application of the law of estoppel.

It is contended by the defendant, that, by force of statute provisions, national bank stock is deemed to belong to the person in whose name it stands on the books of the bank, and is liable to be taken on execution against him as his property, although he may have no beneficial interest in it, and may hold it as a trustee. Stock in corporations cannot be taken on execution, except as authorized by statute, and the statutes of this Commonwealth have made property of this nature liable to be so taken. The Gen. Sts. *c.* 133, § 43, provide that " the share or interest of a stockholder in any corporation established under the authority of this State, may be taken on execution and sold as hereinafter provided." The St. of 1870, *c.* 291, § 1, provides that " the shares or interest of a stockholder in any corporation organized under the laws of the United States, and located or

having a general office in this State, may be attached on mesne process and taken on execution in the same manner as the shares or interest of a stockholder in corporations organized under the laws of this State, may be attached and taken on execution." These statutes do not define what shall be an attachable interest in stock, but leave that to be determined by the common law, or by some other statute. *Boston Music Hall* v. *Cory*, 129 Mass. 435.

At common law, property held in trust cannot be taken on execution as the property of the trustee, and there is no statute of this Commonwealth which relates to the subject. The defendant bank is organized under an act of Congress, and the question then is, whether there is any statute of the United States which makes the stock in a national bank liable to be taken on execution against the person in whose name it stands on the books of the bank, although he never had any beneficial interest in it, and has given a written assignment of it to a person for whom he holds it in trust. The U. S. Rev. Sts. § 915, which give like remedies against the property of a defendant, by attachment or execution, as are provided by the laws of the State, do not affect the question of what shall be competent evidence of the ownership of stock in national banks. The only statutes which bear upon that are the provisions of the U. S. Rev. Sts. which provide, in § 5139, that "the capital stock of each association shall be divided into shares of one hundred dollars each, and be deemed personal property, and transferable on the books of the association in such manner as may be prescribed in the by-laws or articles of association." § 5136 authorizes the association by its directors to make by-laws, not inconsistent with law, regulating the manner in which its stock shall be transferred. § 5210 requires that a list of the names and residences of the shareholders, and the number of shares held by each, shall be kept in the office of the association, which shall be subject to the inspection of the shareholders and creditors of the association, and State officers authorized to assess taxes. § 5151 makes shareholders individually liable for the debts of the association, to a limited amount. But for these provisions and the by-laws enacted in pursuance of them, the assignment in the case at bar would have transferred the legal

interest in the stock to Mrs. Wheelock, and made her the shareholder instead of Hawkins. By the effect of the statute, the legal title is in him, and he is the legal shareholder. The statute provides for transfers of stock, and concerns only the legal status of the shareholder. It does not require that the shareholder shall be deemed to be the beneficial owner of the stock, nor prescribe what shall be competent evidence to prove that he holds it in trust. Although. the act makes provisions concerning stock held in trust (§ 5152), yet it does not prescribe how a trust shall be created, or proved, but leaves that and the rights of the *cestui que trust* unaffected by its provisions. If it contained the provision common in registry acts, that an assignment in any other than the prescribed mode should be void against all persons except the assignor and those having notice, or like that in the railroad law of this State, that a transfer not recorded as prescribed shall be void against all persons other than the grantors or their representatives; Pub. Sts. *c.* 112, § 56 ; or that in the general corporation law of this State, that no assignment shall affect the rights of an attaching creditor unless recorded as prescribed; Pub. Sts. *c.* 105, § 24; or any provision prescribing the manner in which a trust should be created or proved, — a different question would be presented.

It is argued that, by force of the provisions of the statute, the equitable interest of a purchaser for value, who should hold an assignment without a transfer, would not avail against an attaching creditor of the assignor; and that Mrs. Wheelock, having but an equitable interest, stands in the position of such a purchaser. There are two answers to this argument: first, Mrs. Wheelock does not stand in the position of a purchaser from Hawkins. The interest she has was never his; the assignment was but the declaration of an existing trust. If his creditors take all the right that he ever had in the stock, they will not take the beneficial interest. What they seek to take is what he never had, and what he never could have sold or assigned to Mrs. Wheelock or to them. The other answer is, that, if the equitable interest had once belonged to Hawkins, and Mrs. Wheelock held it by assignment from him, it would still prevail against his creditors. This is not vital to the decision of the case, but it was so prominently presented in the argument as

to require some notice, although an extended discussion of it is not proposed. It depends upon the construction of the statute of the United States before referred to. Is it the intent of the statute that equitable interests, acquired from the shareholder, shall be postponed to the rights of his creditors? This must be determined by the statute itself, and the construction given to it by the Supreme Court of the United States, so far as it has been construed by that court. *Black* v. *Zacharie*, 3 How. 483, construed a provision, that no transfers should be valid or effectual until recorded in a book kept for that purpose, as designed for the security of the bank itself, and of third persons taking without notice of any prior equitable transfer, and as relating to the legal title, and not to any equitable interest subordinate to that title. See also *Bank* v. *Lanier*, 11 Wall. 369; *National Bank* v. *Watsontown Bank*, 105 U. S. 217; *Johnston* v. *Laflin*, 103 U. S. 800. The provision in the bank act is, that the stock shall be transferable on the books of the bank in such manner as may be prescribed by its by-laws. The by-law which provides that the stock shall be transferable only on the books of the bank, does not affect the construction of the act. The case of *Black* v. *Zacharie* seems decisive of the question under consideration, for, although it does not decide that an equitable interest derived from the shareholder can be set up against an attaching creditor without notice, but leaves that question, which was not before the court, unconsidered, it does expressly decide that a purchaser with notice cannot hold against the beneficial interest, and that the right of a purchaser without notice is left by the statute to be determined by the common law. See *Dickinson* v. *Central National Bank*, 129 Mass. 279.

The case of *Fisher* v. *Essex Bank*, 5 Gray, 373, affirmed in *Blanchard* v. *Dedham Gas Light Co.* 12 Gray, 213, has been cited as decisive of the question in this State. If the statute under consideration were part of the legislation of this Commonwealth, that case would be of great weight, and require very careful consideration; but the decision itself shows that it can be of but slight aid in determining the question under consideration. That question is, whether Congress intended, by the use of the words "shall be transferable on the books of the association," to make the stock liable to the creditors of an assignor of

it, as against an assignee to whom it had not been transferred of record. In *Fisher* v. *Essex Bank*, the question was, what was the intention of the Legislature of this State in using similar words; and the court found in the general spirit and scope of the legislation of this Commonwealth as to the attachment of shares in corporations, and in the particular legislation as to the attachment of bank shares, evidence that the Legislature intended by the words, " the stock of said bank shall be transferable only at its banking-house, and on its books," to enact that an assignment not so recorded should not be valid against the attaching creditors of the assignor. The effect of notice to an attaching creditor of an unrecorded transfer was not considered. Chief Justice Shaw said: " We are to take it in connection with all other existing laws." " It is obviously an object of great importance, that this large amount of property should be attachable and liable to be sold on execution. This has long been the policy of this State by earlier statutes, ultimately embraced in " the Rev. Sts. *cc.* 90 and 97. Those statutes not only made the shares of any stockholder liable to attachment, but made it the duty of the officer of any corporation keeping its records to give a certificate of the shares or interest of any stockholder on request of any officer having a writ of attachment or execution against such stockholder. Rev. Sts. *c.* 90, § 38; *c.* 97, § 39.

The statute under consideration for construction is a statute of the United States, in whose legislation no such policy existed, and whose legislative acts contained no provisions such as were referred to from the legislation of Massachusetts. The single consideration that the creditor of a shareholder in a national bank has no right of access to the books of the bank, and no means for obtaining knowledge of the transfers upon them, would show that the record was not intended for his benefit.

But, however it may be as to the assignment of the interest of a shareholder, there is nothing in the act which prohibits a trust in bank stock, or prescribes what shall be evidence of a trust, or empowers a creditor of a trustee to take from the true owner, for the debt of the trustee, an interest which was not derived from him, and which never belonged to him.

There is another ground upon which the defendant contends that this bill should be dismissed, even if the stock is not

property of Hawkins which could be taken on execution against him by his creditors generally, and would not pass to the assignee by the terms of the assignment alone. The Gen. Sts. *c.* 118, § 45, provide that, "If a debtor whose property is attached conveys before judgment and execution in the suit any part of such property, and subsequently thereto and before execution issues, proceedings are commenced by or against him as an insolvent debtor, or if a dissolution of an attachment under the preceding section might prevent the property attached from passing to the assignee, the judge before whom proceedings in insolvency are pending, or the court to which the process of attachment is returnable, may upon application made on or before the day of the third meeting of creditors by any person interested, and cause shown thereon, order the lien created by the attachment to continue," and provides further that the assignee may take charge of the action, and levy the execution, and that the amount recovered shall vest in him.

The stock in question was attached by a creditor of Hawkins a short time before the insolvency proceedings were commenced, and an order was made, on the application of the assignee and the attaching creditor, that the lien created by the attachment should continue, and the assignee claims the right to prosecute the action to execution. It is argued that the attachment and the order of the court give to the assignee, under this provision of the statute, whatever right to hold the stock the attaching creditor had, and that it can be determined, only by prosecuting the action in which the attachment was made, what that right was. If the right of the attaching creditor is no greater than that of the assignee, that is, if his right to attach the stock is based upon its being the property of Hawkins, and as such liable to his creditors, it is obvious that the order can have no effect, and is immaterial. We have already seen that there is no such right. Any other right which a creditor of Hawkins can have to attach the stock must be founded on estoppel, and be a personal right of the particular creditor, arising from the relation between him and Mrs. Wheelock, to take her property for the debt of Hawkins. This is not a right which can pass to the assignee, in any form, for the general benefit of the creditors. Whatever the ground of estoppel may be, the result would be

the same; it would be the property of Mrs. Wheelock which would be taken on execution against Hawkins, and not his property. Even if the attaching creditor could hold the position of a *bona fide* purchaser from the trustee, who has paid full consideration, he would be obliged to show that he had no notice of the trust, and his right arising from that would be a personal right of the particular creditor, a right by estoppel, and resting on the consideration that the owner was estopped from setting up her right against him. Whether even a purchaser could acquire from Hawkins a right to a transfer of the stock as against Mrs. Wheelock, may be doubted. Hawkins himself had no right to transfer it. Mrs. Wheelock was not only the beneficial owner, but she held the right to call upon the bank for a transfer of the stock from. the name of Hawkins. The muniment of title, the certificate, with the right to surrender it and demand a transfer of the stock, was rightfully in her possession, and it is not clear that the bank could be required to transfer the stock, against her right, and contrary to the terms of the certificate, to one who had an equity not superior to him. *Bank* v. *Lanier, ubi supra.* Whether it should be said that Hawkins, not holding the certificate, could not give a right to a transfer, or that the fact that he did not hold the certificate would be notice of the trust, would be immaterial as regards the conclusion that he could give no title to a purchaser, as against Mrs. Wheelock. But, whatever the ground of estoppel upon which the attaching creditor might maintain his right to hold the stock, the assignee could not avail himself of that right. The property would not be that of the debtor, and could not pass to the assignee. This is the plain meaning of the statute, and is the construction given to it in *Audenried* v. *Betteley*, 5 Allen, 382, where it was held that property belonging to a third person, who had put it into the hands of the debtor for the purpose of giving him a false credit, did not pass by an assignment under the insolvent laws, although it might have been taken on execution against the debtor. Mr. Justice Hoar said: " The material question then is, whether this property can be regarded as ' the property of the debtor which might have been taken on execution upon a judgment against him,' within the meaning of the law. We are of opinion that· it cannot." Referring to the analogy, which

had been pressed in the argument, to a conveyance in fraud of creditors, the opinion proceeds: " But the defect in this analogy is, that the property which a debtor attempts to convey in fraud of creditors has once been his. When the conveyance is avoided by a creditor, or by one succeeding to the rights of a creditor, in the mode prescribed by law, it is the property of the debtor which is to be dealt with. The assignee takes it as property which in contemplation of law has remained the debtor's property. But in the case at bar, the property never was the property of " the debtor. " The effect of an estoppel which existed as to rights of property between the debtor and third persons would pass to an assignee; but we do not think the insolvent law intended to pass rights of estoppel between the creditor and third persons." See also *Pratt* v. *Wheeler*, 6 Gray, 520.

And the personal right of one creditor cannot be diverted to the general benefit of all the creditors by an order that the lien created by the attachment should survive, and the assignee be admitted to prosecute the action. The statute in terms limits its application to the case of a " debtor whose property is attached," and applies to property of the debtor which would pass under the assignment, and was intended to enable the assignee to protect his right to such property against an intervening claim. If the property was such as would not pass by the assignment, the dissolution of the attachment could not "prevent" it from passing to the assignee. The meaning is plain, not only from the language and intent of the provision in the General Statutes, but from the previous acts. By the insolvent law of 1838, *c.* 163, § 5, the assignment conveyed to the assignee all the property of the debtor, although attached on mesne process, and dissolved all such attachments; and the same provision was continued in the General Statutes. " One leading object of this provision would seem to have been to give further effect to the great object of the insolvent law, the distribution of all the estate of the insolvent among his creditors *pro rata*. But it was found practically that such dissolution of an attachment might not effect that object, inasmuch as other liens might have attached to the property, subject only to the attachment, and, that being removed, the estate would, after all, be applied to the payment of individual creditors, instead of being secured

to the general fund for distribution. To obviate this evil, the St. of 1841, c. 124, § 5, was enacted." *Dewey,* J., in *McIntire* v. *Maynard,* 4 Gray, 429. See also *Purple* v. *Cooke,* 4 Gray, 120 ; *Grant* v. *Lyman,* 4 Met. 470, 474. The St. of 1841, c. 124, § 5, provided that, when it appeared to the judge of probate or master in chancery that a dissolution of any attachment would prevent the attached property from passing to the assignee, he might order that the attachment should survive, and the assignee might be permitted to prosecute the suit to final judgment and execution.

Under these statutes, it was decided that an attachment was dissolved unless the order was made that it survive. *Butterfield* v. *Converse,* 10 Cush. 317. And by the St. of 1855, c. 66, it was enacted that, when any debtor whose property was attached should after the attachment, and before judgment, make any conveyance of the property attached, and afterwards make application as an insolvent debtor, the attachment should not be dissolved. § 2 provided that the court might order the lien of the attachment to continue for the benefit of the creditors, and the assignee might prosecute the action. The St. of 1857, c. 247, provided that the attachment should be held to be dissolved by the assignment, unless the order that it should be continued for the benefit of the creditors should be obtained on or before the day of holding the third meeting of the creditors. It seems obvious that the St. of 1855, c. 66, was intended to supersede the St. of 1841, c. 124, § 5, and that the only material difference was that by the St. of 1855 the attachment in such case was not dissolved by the assignment. In enacting the General Statutes, the language of all these acts is incorporated into one section, Gen. Sts. c. 118, § 45, but obviously with no intention to change the law. See commissioners' notes to the General Statutes. But, apart from the history of the provision, a comparison of the Gen. Sts. c. 118, §§ 44, 45, indicates that it was not intended by § 45 to change the interest or property of a debtor which would pass to the assignee, or to enable the assignee to avail himself, for the benefit of the general creditors, of an attachment based, not upon the right of creditors in the property of the debtor, but upon a right which particular facts, personal to the attaching creditor, give to him in the property of another.

No question is made as to any interest in this suit of the attaching creditor. It appears that he joined with the assignee in procuring the order that the attachment should survive for the benefit of the assignee, and the attachment must be taken to be dissolved, unless the assignee has an interest sufficient to keep it alive. But, as we have seen, the assignee has no interest in the property, and the plaintiff is therefore entitled to a transfer of the stock. *Decree for the plaintiff.*