FITCHBURG SAVINGS BANK *vs.* GEORGE A. TORREY & another.

Worcester.   Oct. 6, 1882. — Feb. 5, 1883.   C. ALLEN, COLBURN & HOLMES, JJ., absent.

While the Gen. Sts. *c.* 63, § 11, (which provided that no conveyance of shares in the capital stock of a railroad corporation should be valid against any other persons than the grantors and their representatives, unless recorded within ten days,) were in force, A., the owner of stock in a railroad corporation, caused a certificate to be issued to B., who executed an assignment in blank on the back thereof, and the certificate thus assigned was delivered to a bank "for the protection of the parties and as collateral security " for a promissory note payable to the bank, and signed by A. as principal and by B. as surety.   Subsequently, the railroad corporation consolidated with another, under an agreement by which the stockholders were entitled to receive for each share of stock a bond for a certain amount.   A., with the consent of the bank, obtained the certificate of stock and received the bonds, and they were paid in full, and the bank received no benefit from them.   *Held*, in an action by the bank on the note against A. and B., that such consent of the bank was a good defence to B., so far as he was injured by the giving up of the stock by the bank.

CONTRACT against George A. Torrey and William O. Brown, on a promissory note for $20,000, dated January 1, 1869, signed by Torrey as principal and by Brown and H. A. Blood as sureties, jointly and severally, and payable on demand to the plaintiff.   Torrey was defaulted, and Brown alone defended.   Trial in the Superior Court, before *Blodgett*, J., who allowed a bill of exceptions, in substance as follows:

It appeared that the loan, in consideration of which this note was given, was made by the plaintiff to Torrey on May 19, 1869, the note being dated back to January 1, 1869. The evidence tended to show that Torrey applied to Brown to sign the note as surety, and Brown objected to doing so; that thereupon Torrey said he would deposit as collateral to the note two hundred shares of the stock of the Fitchburg and Worcester Railroad Company, and Brown then assented to signing the note; that, on May 19, Torrey caused to be issued to Brown a certificate of stock, (which stated on its face that it was "transferable on the back hereof by himself or attorney, and valid, to the purchaser only when recorded in the treasurer's book and a new certificate given to the owner thereof,") and brought the same to Brown; that he and Brown went with it directly to the plaintiff, Brown having executed an assignment in blank of said shares on the back of the certificate, and delivered it to the plaintiff, and said to the plaintiff that the stock was deposited for the protection of the plaintiff and the parties and as collateral security for the note.

On June 28, 1869, by an agreement between the two corporations and by vote of the stockholders of each, a consolidation of the Fitchburg & Worcester Railroad Company with the Boston, Clinton & Fitchburg Railroad Company was consummated, to take effect on July 1, 1869, upon the following terms: The Fitchburg & Worcester Railroad Company was permitted to issue to its stockholders its coupon bonds, payable in twenty years, with the right of redemption in five years, to the full amount of its capital stock, each stockholder to receive an amount of bonds equal to $100 for each share of stock, and to receive in addition one share of the stock of the consolidated road, which retained the name of the Boston, Clinton & Fitchburg Railroad Company, for one share of the Fitchburg & Worcester Railroad Company; and on the same day the stockholders of the Fitchburg & Worcester Railroad Company voted to issue to its stockholders of record at the close of business on June 30, 1869, its coupon bonds, in accordance with said agreement. At the close of business on June 30, 1869, the defendant Brown was the stockholder of record of said two hundred shares, and the plaintiff bank had the certificate of said stock

with the blank assignment thereon, and the railroad company had notice that the plaintiff held the same as collateral security, and had such notice at the time the dividend was declared.

There was evidence tending to show that the plaintiff consented to the taking by Torrey of the $20,000 of coupon bonds issued upon the two hundred shares of stock; and that it directed the railroad company to deliver said bonds to Torrey; and that the treasurer of the Fitchburg & Worcester Railroad Company delivered to Torrey the bonds in question; that these were paid in full; and that the plaintiff never received any benefit therefrom.

The plaintiff asked the judge to rule, that, "if the plaintiff bank, by its officers, did consent that Torrey might take the scrip dividend for his own use, it gave the treasurer of the railroad no sufficient authority to pay the same to Torrey without the consent of Brown, and such consent of the bank is no defence to this action."

The judge declined to give this instruction, and instructed the jury, " that, as against Brown, the bank had the right to the bonds (which, in the case, were sometimes called 'scrip dividends'), and the railroad company would be authorized to deliver the same on the order of the bank without Brown's consent; that the provision of the certificate, that an assignment should not be available to the assignee without the transfer on the books of the company, was a provision for the benefit of the corporation, and, as against Brown, the assignment gave the bank the right to receive the bonds; and that if the plaintiff bank, without the knowledge or consent of Brown, authorized the railroad company to deliver the bonds to Torrey, or consented to the delivery of the bonds to Torrey, Brown would thereby be relieved *pro tanto* from his liability on said note."

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*H. C. Hartwell*, for the plaintiff.

*F. P. Goulding & F. T. Blackmer*, for the defendant.

FIELD, J.   The transfer of shares of stock in railroad companies incorporated by this Commonwealth is regulated by statute.

The Gen. Sts. *c.* 63, § 11, in force when these transfers were made, provide that the shares "may be transferred by a conveyance in writing, recorded either by the treasurer in books to be kept in his office or by an officer duly authorized by the directors in books to be kept at such other place as they may appoint. When recorded in such other place, they shall within ten days thereafter be also recorded in the books kept by the treasurer; and no conveyance of shares shall be valid against any other persons than the grantors or their representatives, unless so recorded. On making the transfer, a new certificate shall be granted." See also Rev. Sts. *c.* 39, § 52; Sts. 1874, *c.* 372, § 44; 1881, *c.* 302; Pub. Sts. *c.* 112, § 56.

The transfer of the shares from Torrey to Brown, the record thereof, and the issuing of a certificate to Brown in his name, passed the legal title to the shares to Brown, although he held them as security to indemnify him against his liability on the note. Brown became a stockholder of the corporation. *Holyoke Bank* v. *Burnham*, 11 Cush. 183.

The execution of the assignment on the back of the certificate by Brown, and the delivery of the certificate with this assignment by Brown, with the assent of Torrey, to the bank, passed, as between the parties, all the interest of Brown and Torrey in the shares to the bank, to hold as collateral security for the payment of the note. *Dickinson* v. *Central National Bank*, 129 Mass. 279. *Cushman* v. *Thayer Manuf. Co.* 76 N. Y. 365.

Such a title is sometimes called an equitable title with an irrevocable power to acquire the legal title, and sometimes a legal title as between the parties; but this is a question of the proper use of words. The bank had a right to fill the blank in the assignment so as to make it an assignment to itself, and then to present it to the corporation for record, and to receive a new certificate in its own name; and without such record, after notice to the corporation that the bank held the certificate of these shares as collateral security, the corporation could not rightfully issue a new certificate of the shares to any other person than the bank, except by its consent, unless that person's title to the shares was superior to that of the bank. *Bank* v. *Lanier*, 11 Wall. 369. *Dickinson* v. *Central National Bank, ubi supra.*

Whatever, before the St. of 1881, *c.* 302, may have been the law in regard to the right of paying ordinary dividends upon stock to the owner of record at the time they are declared, although notice may have been previously given of a transfer of the stock which has not been presented for record, (see *Ellis* v. *Essex Merrimack Bridge,* 2 Pick. 243; *Sargent* v. *Essex Marine Railway,* 9 Pick. 201,) yet the bonds in this case were not dividends upon the stock. It was a part of the arrangement under which the two roads were consolidated, that the stockholders of the Fitchburg & Worcester Railroad Company should receive for each share of stock a bond of that road for $100 and one share of the stock of the consolidated road. The bonds were a substitute in part for the stock, and belonged to the person who owned the stock. In the absence of any notice to the contrary, the corporation would have the right to assume that the owner of record was the actual owner of the stock. In the case at bar this was Brown. But a delivery of these bonds by the railroad company to the bank would have been good as against Brown, because the bank, as against him, was the owner of the stock, and was entitled to receive the bonds issued for the stock and to hold them upon the same terms as it held the stock, and, after notice to the company that the bank held the stock and a demand by it for the bonds, the railroad company could rightfully deliver the bonds only to the bank.

The jury must have found that the bank authorized the railroad company to deliver the bonds to Torrey, or consented to such delivery without the knowledge or consent of Brown. The consent of the bank, as these words are used in the exceptions, cannot be taken to mean merely non-action on the part of the bank, or negligence on its part to demand the bonds, but must mean an actual authority or permission by the bank to deliver the bonds to Torrey; neither can the words be taken to mean a conditional consent by the bank, to the effect that the bank would consent to such a delivery if Brown would consent; but they must mean an absolute consent or permission. Such a consent is tantamount to a direction or authority by the bank to deliver the bonds to Torrey; and, as the bonds have thus been lost to Brown, he is entitled to be put in the same position he would be in if the bank had itself received the bonds. The

English cases perhaps go further than this. *Wulff* v. *Jay*, L. R. 7 Q. B. 756. *Polak* v. *Everett*, 1 Q. B. D. 669.

It is immaterial whether the stock be regarded as a security to the bank given by Torrey or by Brown; it was a security to which Brown was entitled if he paid the note, and to the extent of the value of the bonds it has been lost to him by the act of the bank.

This is an action against both Torrey and Brown on a note signed by them with one Blood, in which the signers jointly and severally promised to pay twenty thousand dollars on demand to the plaintiff. Blood was not made a party, and Torrey has been defaulted. We suppose that this action was brought against two of the three promisors pursuant to the Gen. Sts. c. 129, § 4, under which separate judgments can be entered; *Hawkes* v. *Phillips*, 7 Gray, 284; and the point has not been taken that this defence cannot be made by a surety in a joint action at law against principal and surety, because it would require different judgments to be entered against joint defendants, and it need not be considered, as it is not applicable to the case. *Baker* v. *Briggs*, 8 Pick. 122. *Carpenter* v. *King*, 9 Met. 511.

In an action at law against the surety alone, he can avail himself of this defence, and need not resort to equity; *Guild* v. *Butler*, 127 Mass. 386; and this is essentially an action against the defendants severally. The instruction of the court was correct, that Brown would be relieved from liability to the extent of his loss by reason of the delivery of the bonds to Torrey; and all the rulings of the court were substantially right.

*Exceptions overruled.*