CENTRAL NATIONAL BANK *vs.* A. L. WILLISTON & others.

Hampshire.    Sept. 18, 1884. — Jan. 20, 1885.    C. ALLEN & COLBURN, JJ., absent.

An owner of stock in a manufacturing corporation, and holder of a certificate thereof in his own name, delivered the certificate, with a printed assignment in blank, signed by him, indorsed upon it, to A. for the purpose of transferring the stock to him as collateral security for a debt. While A. so held the certificate, and before the assignment had been filled out, and before notice of the assignment had been given to the corporation, the stock was attached by B., who had no notice of the assignment, as the property of the assignor. The certificate contained on its face the words, "Transferable only on the books of the company, in person or by power of attorney, on surrender of this certificate." *Held*, on a bill in equity, that, under the St. of 1870, c. 224, § 26, B. was entitled to hold the stock as against A.

W. ALLEN, J.    An owner of stock, and holder of a certificate thereof in his own name, in a manufacturing corporation existing under the general laws of, and doing business in, this State, delivered the certificate, with a printed assignment in blank, signed by him, indorsed upon it, to the plaintiff bank, for the purpose of transfering the stock to it to hold as security for negotiable paper. While it so held the certificate, and before the assignment had been filled out, and before notice of the assignment had been given to the corporation, the stock was attached,

as the property of the assignor, by the defendant Williston, who had no knowledge or notice of the assignment, "although he had good reason to suspect that the owner of the stock had raised money upon it." The certificate contained on its face the words, "Transferable only on the books of the company, in person or by power of attorney, on surrender of this certificate."

This bill in equity is brought by the plaintiff to secure its right in the stock; and the question is whether its title is good against the defendant Williston, as attaching creditor of the assignor. There are two such assignments, the circumstances being alike, except that one was made before the St. of 1881, *c.* 302, (Pub. Sts. *c.* 105, § 24,) and the other when that statute was in force, and that the assignor was the treasurer of the corporation when the last one was made. It is assumed that the assignments are sufficient to sustain the right of the plaintiff, unless they are rendered invalid against attaching creditors by the statutes of this State. *Boston Music Hall* v. *Cory*, 129 Mass. 435, and cases cited. *Sibley* v. *Quinsigamond National Bank*, 133 Mass. 515. The general act relating to manufacturing corporations in force when the first assignment was made was the St. of 1870, *c.* 224. Section 26 provided that "shares may be transferred by the proprietor, by an instrument in writing under his hand, which shall be recorded by the clerk of the corporation in a book to be kept for the purpose. The purchaser named in such instrument so recorded shall, on producing the same to the treasurer, and delivering to him the former certificate, be entitled to a new certificate." Provisions of the same kind exist in the statutes of other States, and have received different constructions. By some courts they are held to be intended only for the benefit of the corporation, to regulate its relations with its stockholders; by others they are held to be in the nature of registry laws, regulating the transfer of the stock as to third parties. Perhaps the former is the view more generally taken. It is the law of New York, where these assignments were made. *Robinson* v. *New Berne National Bank*, 95 N. Y. 637. But the question here is upon the construction of a statute of this State, which is settled by the intention shown by the course and policy of legislation upon the subject, and by the decisions upon this and similar statutes.

The policy of the legislation of this Commonwealth has been to make stock in corporations liable to attachment by the creditors of the owners. The St. of 1804, *c.* 83, provided in detail for the manner of attaching on mesne process, and taking on execution, shares of debtors in incorporated companies; and its provisions have substantially remained in force since, and appear in the Pub. Sts. *c.* 161, §§ 71–73, and *c.* 171, §§ 44–50. The provisions of the Pub. Sts. *c.* 161, § 73, and *c.* 171, § 48, requiring the officer of a corporation having charge of its records of assignments of shares to give a certificate of the number of shares owned by a debtor named in a writ of attachment or execution, on demand by an officer having such writ, were in substance there enacted, and have been in force ever since.

In the first general law concerning manufacturing corporations, St. 1808, *c.* 65, it was provided that shares might be alienated by a deed under seal, acknowledged before a justice of the peace, and recorded by the clerk of the corporation in a book to be kept for the purpose. This provision, with the change . from a deed acknowledged to an instrument in writing, made by the St. of 1846, *c.* 45, remained in force until the St. of 1884, *c.* 229, and was applied to the many corporations which have been brought by statutes within the general designation of manufacturing corporations. When general laws were enacted concerning railroad and street railway corporations, it was provided that shares might be transferred by an instrument in writing recorded by the treasurer in books kept in his office, and that no conveyance of shares should be valid against any other persons than the grantors and their legal representatives unless so recorded. Sts. 1833, *c.* 187, § 8; 1864, *c.* 229, § 10. Pub. Sts. *c.* 112, § 56, and *c.* 113, § 13. The probable intention of the Legislature was to put the transfer of stock in railroad corporations on the same footing as that of stock in manufacturing corporations, and to express in the later acts the construction given to the earlier ones.

The same general intention is manifested in the acts relating to transfers of stock as collateral security. The St. of 1838, *c.* 98, provided that, in transfers of stock as collateral security, the debt should be described in the instrument of transfer, and that the certificate to the pledgee should express on its face that it

was pledged, and the name of the pledgor ; and that the officer of the corporation having the custody of the records of the transfer of shares, upon the written request of a creditor of the general owner, should exhibit to him the record of such transfer. See Pub. Sts. *c.* 105, §§ 25, 26.

The inference from this course of legislation, that the record of the transfer of stock required by statute is for the benefit of attaching creditors, is strengthened by the action of the Legislature at its session next after the decision of *Boston Music Hall* v. *Cory, ubi supra,* — which decided that, in the absence of any statutory requirement, the transfer of stock in a corporation by a written assignment without recording was valid against attaching creditors, — in the enactment of the St. of 1881, *c.* 302, which provided that " no sale, assignment, or transfer of stock in any corporation shall affect the right of any corporation to pay any dividend due upon said stock, or against the title or rights of any attaching creditor, until it is recorded upon the books of the corporation, or a new certificate is issued to the person to whom it has been transferred: provided, that no attachment of said stock as the property of the vendor, made after such sale, assignment, or transfer, shall defeat the title or affect the rights of the vendee, if such record is made or a new certificate issued within ten days after such transfer is made."     The St. of 1884, *c.* 229, which made a delivery of a certificate of stock in a corporation, with a written assignment or power of attorney to transfer, sufficient against all parties, was plainly not declarative of the meaning of former acts, but the establishment of a new rule, showing a change of legislative intention.

The construction of a similar statute to that now under consideration, as affecting attaching creditors, and the rights under it of such creditors and purchasers, against a prior unrecorded assignment, were fully considered in the case of *Fisher* v. *Essex Bank,* 5 Gray, 373, which was decided, in a well-considered opinion of Chief Justice Shaw, upon the ground that, in view of the objects intended by the Legislature, the statute rendered invalid, as against attaching creditors, any transfers of stock except in the manner prescribed.   He says, " All these objects are most effectually accomplished by making the transfer at the bank, the decisive act of passing the property, the legal, transferable,

attachable interest." This decision has been followed in cases relating to the transfers of stock in manufacturing and railroad corporations. *Boyd* v. *Rockport Steam Cotton Mills*, 7 Gray, 406. *Blanchard* v. *Dedham Gas Light Co.* 12 Gray, 213. *Johnson* v. *Somerville Dyeing & Bleaching Co.* 15 Gray, 216. *Rock* v. *Nichols*, 3 Allen, 342.

The cases of *Dickinson* v. *Central National Bank*, 129 Mass. 279, and *Sibley* v. *Quinsigamond National Bank*, *ubi supra*, were under statutes of the United States, and do not apply to the statute under consideration.

The question in the case at bar is not presented in precisely the same aspect as in any of the cases cited, but it is the same question. The stock has not been sold and transferred, under the attachment, but the right to it was fixed when the attachment was made. The attaching creditor then acquired the rights of a purchaser for value, and the case is to be determined as if the stock had then been sold on execution and a certificate of it given to the creditor. At that time, the blank assignment had not been filled out, or presented for record, and no demand had been made on the corporation for a new certificate, and the attaching creditor had no notice of the assignment. That, upon these facts, the statute makes the assignment invalid as to him, cannot be doubted. The legislative action and judicial decisions upon the subject are conclusive of the construction and effect to be given to the statute.

There is no occasion for us to consider whether the evidence of notice of the assignment to the attaching creditor, or of an offer of the old certificate by the assignee to the corporation, with a request for record and for a new certificate, would have been material.

The second assignment is affected by the St. of 1881, *c.* 302, which is decisive against the right of the plaintiff. *Newell* v. *Williston*, *ante*, 240.            *Bill dismissed.*

*W. G. Bassett*, for the plaintiff.

*M. F. Dickinson, Jr.*, (*J. C. Hammond* with him,) for the defendant Williston.