GEORGE F. ANDREWS, executor, *vs.* WORCESTER, NASHUA, AND ROCHESTER RAILROAD COMPANY & another.

Worcester.    October 6, 1892. — May 17, 1893.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Certificate of Stock — Transfer — Attachment and Execution — Statute — Bona Fide Purchaser or Pledgee for Value — Power of Attorney signed in Blank — Delivery.*

A., the owner of five shares of the capital stock of a railroad corporation, transferred them to B., to whom a new certificate was issued on December 1, 1884. A. lent the stock to B., who testified that the certificate was issued to him in order that he might become a director in the corporation, but it did not appear that A. lent the old certificate to B. for this purpose, or knew that B. was going to use it in this way. A few days after the transfer to B., B. delivered the new certificate to A., having first signed the transfer in blank on the back of the certificate. On February 16, 1886, C. attached the shares in an action against B., in which he recovered judgment for an amount greater than the value of the shares, and they were sold on execution in 1891 to D. *Held*, on a bill in equity by the executor of the will of the executrix and residuary legatee of A., to compel the corporation to issue to him a new certificate and to restrain D. from preventing such issue, that A. was a "*bona fide* purchaser or pledgee, for value," and the power of attorney signed by B. in blank was a power of attorney within the meaning of St. 1884, c. 229; that the term "purchase" includes every lawful method of coming to an estate by the act of a party, as opposed to the act of law, and that the delivery of the certificate, accompanied by the power of attorney signed in blank, was sufficient.

LATHROP, J.    This is a bill in equity by the executor of the will of Vienna McKean, to compel the defendant corporation to issue a certificate for five shares of its capital stock to the plaintiff, and to restrain the defendant, Timothy W. Hammond, from interfering with or preventing the issue of such certificate.

Vienna McKean was the executrix and residuary legatee of Albert McKean, who at one time was the owner of the five shares in question.    He transferred them to his son, Frank A. McKean, and a new certificate was issued in the name of Frank, bearing date December 1, 1884.    It appears that Frank did not buy the stock of his father, but his father lent it to him. The son testified that the certificate was issued to him in order that he might become a director in the defendant corporation ; but it does not appear that his father lent the old certificate to him for this purpose, or knew that his son was going to use it in this way, if this is material.

Within a few days after the transfer to him, Frank delivered the new certificate to his father, having first signed the following on the back of it: "For value received      hereby constitute and appoint          attorney to transfer unto          shares of the capital stock represented by the within certificate on the books of the within named company, with full power of substitution in the premises."

On February 16, 1886, one Haynes attached the shares of stock in an action against Frank A. McKean, in which he recovered judgment for an amount greater than the value of the shares.    The shares were sold on execution in 1891, and the defendant Hammond became the purchaser.

Section 56 of the Pub. Sts. c. 112, provides for the transfer of shares in railroad corporations "by a conveyance in writing, recorded either by the treasurer in books to be kept in his office, or by an officer duly authorized by the directors, in books to be kept at such other place as they may appoint.    When recorded in such other place, such conveyances shall within ten days thereafter be also recorded in the books kept by the treasurer ; and no conveyance of shares, unless so recorded, shall be valid against any other persons than the grantors or their representatives, except as provided in section twenty-four of chapter one hundred and five.    On making the transfer, a new certificate shall be issued."    This is the same as the St. of 1874, c. 372, § 44.

Section 24 of the Pub. Sts. c. 105, provides that "No sale, assignment, or transfer of stock in a corporation shall affect the right of the corporation to pay any dividend due upon the same,

or affect the title or rights of an attaching creditor, until it is recorded upon the books of the corporation, or a new certificate is issued to the person to whom it has been transferred; but no attachment of such stock as the property of the vendor, made after such sale, assignment, or transfer, shall defeat the title or affect the rights of the vendee, if such record is made or a new certificate issued within ten days after such transfer is made." This section is the same as the St. of 1881, c. 302.

Very probably, if the rights of the parties in the case at bar depended upon these statutes, the defendant Hammond would be entitled to a decree. *Central National Bank* v. *Williston,* 138 Mass. 244, and cases cited. But, as was stated in *Central National Bank* v. *Williston,* the St. of 1884, c. 229, is "the establishment of a new rule, showing a change of legislative intention." 138 Mass. 247. And it is by the terms of this act that the case at bar is to be determined. It is as follows: "The delivery of a stock certificate of a corporation to a *bona fide* purchaser or pledgee, for value, together with a written transfer of the same, or a written power of attorney to sell, assign, and transfer the same, signed by the owner of the certificate, shall be a sufficient delivery to transfer the title as against all parties; but no such transfer shall affect the right of the corporation to pay any dividend due upon the stock, or to treat the holder of record as the holder in fact, until such transfer is recorded upon the books of the corporation, or a new certificate is issued to the person to whom it has been so transferred."

It is suggested that Albert McKean cannot be considered a "*bona fide* purchaser or pledgee, for value," within the meaning of these words in the statute. We see no reason to doubt that the evidence is sufficient to warrant a finding that he acted in good faith. Albert McKean was undoubtedly, at one time, the owner of the shares of stock. He lent them to his son, and executed a transfer of the certificate to him. The son took out a new certificate. The effect of this transaction between the father and son was that kind of a loan termed a *mutuum,* and there was an implied promise on the part of the son to return an equal number of shares in consideration of the transfer to him. When, therefore, the son delivered to his father the new certificate, with a power of attorney signed by him in blank on

the back thereof, his father became the holder of this certificate for value, and entitled to a new certificate, if the power of attorney in blank is a power of attorney within the meaning of those words in the statute, a point which we shall presently consider. The term "purchaser" means one who acquires property by purchase, and the term "purchase," as said by Chief Justice Chapman, in *Burt* v. *Merchants' Ins. Co.* 106 Mass. 356, 364, "includes every lawful method of coming to an estate by the act of a party, as opposed to the act of law." See also *Kohl* v. *United States*, 91 U. S. 367, 374.

The fact that the debt was in existence before the transfer to Albert does not make it the less a transfer for value. See *Merchants' Ins. Co.* v. *Abbott*, 131 Mass. 397, 400, and cases cited; *Taylor* v. *Blakelock*, 32 Ch. D. 560.

The remaining question is whether the delivery of the certificate, accompanied by a power of attorney signed in blank, is sufficient.

In *Fitchburg Savings Bank* v. *Torrey*, 134 Mass. 239, the delivery to a savings bank of a certificate of stock in a railroad corporation, with an assignment on the back signed in blank, was held, as between the parties, to pass all the interest of the person in whose name the certificate was made out; and it was said: "Such a title is sometimes called an equitable title with an irrevocable power to acquire the legal title, and sometimes a legal title as between the parties; but this is a question of the proper use of words. The bank had a right to fill the blank in the assignment so as to make it an assignment to itself, and then to present it to the corporation for record, and to receive a new certificate in its own name." See also *Stone* v. *Hackett*, 12 Gray, 227.

If an assignment in blank is sufficient to pass the title in a certificate of stock, we see no reason why a power of attorney signed in blank is not " a written power of attorney," within the St. of 1884, c. 229. So long as Albert McKean held the certificate and the power of attorney, he alone had the right to fill out the power, and demand a transfer. See also *McNeil* v. *Tenth National Bank*, 46 N. Y. 325; *Holbrook* v. *New Jersey Zinc Co.* 57 N. Y. 616; Morawetz, Corp. (2d ed.) § 185; Lowell, Tr. of Stock, § 45.

The plaintiff has now the rights of Albert McKean; and we are of opinion that he is entitled to the relief sought for.

*Decree affirmed.*

*W. S. B. Hopkins,* (*F. B. Smith* with him,) for the defendant Hammond.

*F. P. Goulding,* for the plaintiff.