ABRAHAM C. RATSHESKY *vs.* BENJAMIN PISCOPO & others.

Suffolk. March 10, 1921. — June 3, 1921.

Present: RUGG, C. J., BRALEY, PIERCE, & CARROLL, JJ.

*Equity Pleading and Practice, Appeal, Waiver. Waiver. Equity Jurisdiction,* Specific performance. *Bona Fide Purchaser. Notice. Words, " About."*

If, at the hearing in this court of an appeal by the defendant in a suit in equity from a final decree for the plaintiff, the defendant does not argue nor rely upon an appeal previously taken by him from an interlocutory decree overruling a demurrer to the bill, the appeal from the interlocutory decree must be treated as waived.

Where a purchaser of real estate, before he pays therefor and takes title, has knowledge of any fact sufficient to put him upon inquiry as to whether there may not be some outstanding right in conflict with the title he is about to acquire, he cannot be considered a *bona fide* purchaser even if he thereafter pays value for the property.

The defendants in a suit in equity for specific performance of an agreement for the sale and conveyance of land to the plaintiff were a person who as owner had agreed to convey the land to the plaintiff, a woman to whom, notwithstanding the agreement, he had conveyed it, and the woman's husband for whom she had taken title. It appeared that the plaintiff's rights as to the grantee and her husband, so far as notice and knowledge with which they were chargeable were concerned, were substantially the same. The agreement was to convey "about 1860 square feet" of land, "more particularly bounded and described in a deed to " the owner from his predecessor in title, to which reference was made " for a more particular description of the bounds and measurements thereof." That previous deed described the land by metes and bounds and stated that it contained "1860 square feet . . . be all said measurements and contents more or less." After the execution and delivery of the agreement, a surveyor for the plaintiff discovered that the parcel contained two thousand eight hundred and thirteen feet, and his attorney discovered that the title was subject to certain easements for the benefit of the owner of the adjoining land. By arrangement between the attorneys for the parties to the agreement, the time for performance of the agreement then was postponed for the institution of proceedings in the Land Court to register the title. In those proceedings the owner of the adjoining land appeared as a respondent. The plaintiff was always ready and willing to accept conveyance and to pay the purchase price and offered to do so on the day to which the time for performance of the agreement was last extended. The attorney for the owner of the adjoining land, after the date of the last extension of the agreement with the plaintiff, was told " what the story of the transaction with " the plaintiff was, that there had been no further extension of the agreement with the plaintiff, and also in substance that there was a mutual misunderstanding in regard to the area of the land which nullified the agreement, and his client purchased the land, taking title in the name of his wife and giving to the owner, upon his insistence, a bond indemnifying the owner against suit by the plaintiff, the owner agreeing with him in writing to assist him in defending any such suit. *Held,* that

(1) Before the payment of the purchase money by the defendant purchaser, he was put upon notice of the plaintiff's rights and was bound by the knowledge gained by his attorney;

(2) The defendant purchaser was not a *bona fide* purchaser;

(3) Being able and willing to perform, the plaintiff was entitled to have his agreement enforced specifically, so far as the owner was capable of compliance, with a deduction from the purchase price for any deficiency in title or of quantity or of quality of the estate to be conveyed;

(4) The words, "containing about 1860 square feet," were the equivalent of "1860 square feet more or less;"

(5) By the use of the language employed in the agreement and in the deed to the owner from his predecessor in title, the parties assumed the contingency of quantity of land, whether it fell short of or exceeded the estimate;

(6) Upon an appeal by the defendants from a final decree directing the defendant purchaser to deliver to the plaintiff a properly stamped quitclaim deed of the premises as described in the deed to the owner from his predecessor in title (which was referred to in the agreement with the plaintiff) subject to easements to which the land was subject in favor of the defendant owner of the adjoining lot, and awarding costs to the plaintiff, the decree was affirmed.

BILL IN EQUITY, filed in the Superior Court on April 11, 1918, and on motion removed to the Supreme Judicial Court, against Benjamin Piscopo, Albert A. Golden and Edith B. Golden, alleging in substance that the defendant Piscopo had agreed in writing on December 4, 1917, to sell to the plaintiff for $11,000 " the real estate on the southeasterly side of Hanover Street, in . . . Boston, lying northeasterly and southeasterly of the Hotel Venice so called containing about 1860 square feet, the same being more particularly bounded and described in a deed to . . . [Piscopo] from Francesco Sessa, dated July 15, 1904, recorded with Suffolk Deeds, Book 2990, page 209, to which forerence [sic,] may be had for a more particular description of the bounds and measurements thereof; " that, upon the title being examined by the plaintiff's attorney, it was discovered that there were certain obstructions placed thereon by the defendant Albert A. Golden, who owned the Hotel Venice property mentioned in the agreement, and that it was subject to passageway rights for the benefit of that property; that attorneys for the plaintiff and for Piscopo thereupon agreed that the matter of the title should be referred to the Land Court, and successive extensions of the agreement for conveyance were made to and including February 26, 1918, at which time the plaintiff was present, ready and willing to fulfil his part of the agreement; that Piscopo, instead of conveying to the plaintiff, sold and conveyed the premises to the defendant Edith B. Golden who took title for her husband, Albert A. Golden, both of whom had notice of the plaintiff's rights. The prayers of the bill were in substance that the sale from Piscopo to Edith B. Golden should be decreed to be invalid and in violation of the plaintiff's rights, that " the defendant Piscopo be ordered specifically to perform his agreement with the plaintiff upon payment by the plaintiff of the consideration provided in said agreement, less an allowance for the decreased value of said real estate by reason of the interests therein claimed by the defendant Albert A. Golden," and that the plaintiff be awarded damages.

The defendants demurred to the bill. The demurrers were heard by *Jenney, J.*, by whose order an interlocutory decree was entered overruling them, from which the defendants appealed. Upon issue being joined, the suit was referred to a master. Material findings of the master are described in the opinion. His

findings as to the area were, more specifically, as follows: The deeds from Sessa to Piscopo described the land by metes and bounds and stated that it contained one thousand eight hundred and sixty square feet, " be all said measurements and contents more or less." " Sherry [a surveyor employed by the plaintiff] completed his survey before December 21, and the plan prepared by him showed the area of the locus to be 2813 square feet, which was the first information that the parties had of that fact, instead of ' about 1860 square feet ' as recited in the agreement between the plaintiff and Piscopo, such recital being based on the statement of area contained in the deed from Sessa to Piscopo previously mentioned."

The suit was heard further by *Jenney, J.*, by whose order there were entered an interlocutory decree confirming the master's report and a final decree directing the three defendants to deliver to the plaintiff " a properly stamped quitclaim deed " of the premises in question, which were specifically described in the decree by metes and bounds, with the additional recital as follows: " Be said measurements and contents more or less, and the said premises being the same premises conveyed to the defendant Benjamin Piscopo by Francesco Sessa, July 15, 1904 by deed duly recorded with Suffolk Deeds, Book 2990, page 209." The decree further stated: " Said deed shall convey said land free from all taxes, including taxes assessed for the year 1920, and free from any encumbrances made or suffered by the defendants or any of them, provided, however, that the defendant Piscopo may except from the operation of the covenants of the deed the title and interest in said land conveyed by him to the defendant Edith B. Golden by deed dated March 20, 1918, and recorded in the registry of deeds for said county of Suffolk, book 4077, page 530; and the defendant Albert A. Golden may except from said covenants any title or interest in or to said land or any easement therein, if there be any such title, interest, or easement, which he owned or to which he was entitled prior to said deed to Edith B. Golden."

Costs were awarded to the plaintiff. The defendants appealed from the final decree.

*F. P. Garland,* for the defendants.

*F. N. Nay,* (*M. L. Lourie* with him,) for the plaintiff.

BRALEY, J.   The appeals from the interlocutory decrees over-
ruling the demurrers not having been argued are to be treated as
waived, and the questions for decision under the defendants'
appeals from the final decree are, whether the defendant Edith
B. Golden is an innocent purchaser for value of the premises in
dispute, and, if she is not, whether the plaintiff is entitled to spe-
cific performance.   The case was submitted to the single justice
and is before us on a master's report, from which it appears that
before the various transactions he reports took place, the defend-
ant Piscopo, hereafter called the vendor, was seised in fee, subject
to certain alleged easements or rights of the defendant Albert A.
Golden.   It is stated by the master "that any notice or knowl-
edge chargeable to" the defendant Albert A. Golden, "is also
chargeable to" his wife, the defendant Edith B. Golden, "and
that, as regards each, the plaintiff's rights are substantially the
same."   We shall accordingly refer to them as the defendants.

The plaintiff concedes that Golden actually paid the purchase
price and received a deed of the premises sufficient to pass the ven-
dor's title.   The general law however is that, where a purchaser
before payment and taking title has knowledge of any fact suffi-
cient to put him upon inquiry whether there may not be some
outstanding right in conflict with the title he is about to acquire,
he cannot be considered a *bona fide* purchaser even if he thereafter
pays value for the property.   *Pingree* v. *Coffin,* 12 Gray, 288, 307.
*Andrews* v. *Worcester, Nashua & Rochester Railroad,* 159 Mass.
64.   *Jewett* v. *Palmer,* 7 Johns. Ch. 65.   *Hayden* v. *Charter Oak
Driving Park,* 63 Conn. 142, 147.   *Bergstrom* v. *Johnson,* 111 Minn.
247.   *Baldwin* v. *Richman,* 1 Stockt. 394, 400.   *Williamson* v.
*Brown,* 15 N. Y. 354, 362.   See *Wenz* v. *Pastene,* 209 Mass. 359.

It is found that under the agreement with the plaintiff the ven-
dor could not "give a good and clear title."   But, after several
extensions of the time for performance, the vendor with the
knowledge and assent of the plaintiff petitioned the Land Court
for registration, making Golden a party respondent and Henry
Siskind, Esquire, duly appeared for him as counsel.   Counsel for
the vendor and counsel for Golden subsequently had an interview
during which "the situation in regard to the title" was discussed,
and Mr. Siskind was told that the vendor "had filed the petition
to register the title in order to perfect the title and to make

conveyance to the plaintiff, with whom he had an agreement to sell the property." The petition however has never been prosecuted, and was pending when the plaintiff recorded the agreement in the registry of deeds, and shortly thereafter the defendants entered into negotiations with the vendor. The master's report states that "none of the defendants was guilty of fraud or bad faith," and that when inquiry was made of the vendor's counsel "whether there was any existing agreement for the sale of that property ... the latter answered in the negative," and Golden then made "an oral agreement to buy the property." But Mr. Siskind, acting for the defendants, had made an examination of the title, and, finding the recorded agreement under which the date for completing the sale as extended from time to time had expired, he made further inquiry of the vendor's counsel, and was told "what the story of the transaction with Mr. Ratshesky was, and that there had been no [further] extension of the agreement which he mentioned; and also stated in substance that there was a mutual misunderstanding in regard to the area of the land which nullified the agreement. . . . It was then arranged that the conveyance by Piscopo to Golden was to be made on March 19, but on that date" counsel, "who previously had advised Piscopo that he ought not to sell this property without getting an indemnity bond from Golden against any suit by the present plaintiff, informed Mr. Siskind that, in view of the fact that the present plaintiff might bring an action against Piscopo, he wanted a bond to indemnify Piscopo against such a contingency. This request was reported to Golden by Mr. Siskind, who told him that, if he wanted to take that title, he would have to give the bond; 'that they would not pass papers any other way.'" The bond was given and the conveyance made, accompanied by an agreement as a part of the transaction executed by the vendor "to assist the defendant Golden in defending any suit, either at law or in equity, which might be brought by the present plaintiff."

The master accordingly was justified in finding, that "Golden had notice, communicated to him by Mr. Siskind about the middle of March, of the recorded agreement for sale between the plaintiff and Piscopo, but Golden had not notice that the plaintiff had any equitable right, title, or interest in the property, or that the

plaintiff claimed any right to the property at the time Golden took conveyance, unless he has such notice as may be imputable to him by reason of the knowledge obtained by his attorney, Mr. Siskind, from the proceedings in the Land Court, and also such notice as he, Golden, may be chargeable with by reason of the execution of the bond and agreement between Piscopo and the Goldens, hereinbefore mentioned." It is manifest that before payment of the purchase money the defendants had actual notice, that an agreement for the sale of the land antedating their own purchase had been entered into between the plaintiff and vendor, and the fact that before they could obtain title a bond of indemnity must be given to assist the vendor in defending any attempt of the plaintiff to enforce the agreement, was sufficient to put them upon inquiry. *Pingree* v. *Coffin,* 12 Gray, 288, 307. *George* v. *Kent,* 7 Allen, 16, 18. *Hughes* v. *Williams,* 218 Mass. 448, 551. 27 R. C. L. Vendor and Purchaser, § 475, and cases cited in notes 14 and 15. *Buttrick* v. *Holden,* 13 Met. 355, relied on by the defendants is not in conflict for reasons stated in *Shaw* v. *Spencer,* 100 Mass. 382, 391. The defendants also were bound by the knowledge of their counsel who had been fully informed of the agreement, and of the attempt to register the land, but who is not shown to have made any inquiries of the plaintiff or his counsel before the conveyance to the defendants. *Haven* v. *Snow,* 14 Pick. 28. *Raynes* v. *Sharp,* 238 Mass. 20.

But, even if the defendants are not *bona fide* purchasers, they join with the vendor in the common defence that the plaintiff is estopped from maintaining the bill. The report conclusively shows that up to the time of bringing suit the plaintiff insisted on a clear title which the vendor could not give because of adverse claims to "the land shown as covered by obstructions on the plan filed with the petition" in the Land Court, a copy of which forms part of the present record. If the plaintiff could have rescinded, or sued in damages for breach, he never consented to a cancellation or abrogation of the agreement. *Burk* v. *Schreiber,* 183 Mass. 35, and cases there cited. *Wenz* v. *Pastene,* 209 Mass. 359, 364. And it is settled that, being able and willing to perform, the plaintiff can have the agreement specifically enforced in so far as the vendor is capable of compliance, with a deduction from the purchase price for any deficiency in title, or of quantity,

or of quality of the estate to be conveyed. *Cashman* v. *Bean,* 226 Mass. 198, 202. It is not contended that time was of the essence of the contract, *Mansfield* v. *Wiles,* 221 Mass. 75; and the difference in area which is stated in the agreement as "about 1860 square feet," though the plan and computation of the surveyor showed it to be two thousand eight hundred and thirteen square feet does not entitle the defendants to a dismissal of the bill. While the difference was not known to either party at the time of the agreement, the vendor undertook to sell, and the plaintiff to purchase, "the real estate . . . containing about 1860 square feet, the same being more particularly bounded and described in a deed" to the vendor from one Sessa duly recorded "to which reference may be had for a more particular description of the bounds and measurements," and the master says that the recital of the area in the agreement is based on the corresponding statement of the area in the deed. The words "containing about 1860 square feet," are the equivalent of the words "more or less," and there is nothing in the record to show that the quantity of land constituted an essential element, or that the parties relied upon the number of square feet as measuring in any way the purchase price. A deed in accordance with the agreement would have consummated the bargain. The sale therefore was not a sale of one thousand eight hundred and sixty square feet at a fixed price for each foot, nor was there any agreement that the land should be measured. The parties under the circumstances assumed the contingency of quantity whether it fell short or exceeded the estimate. *Williams* v. *Hathaway,* 19 Pick. 387, 388. *Pickman* v. *Trinity Church,* 123 Mass. 1. *Cashman* v. *Bean,* 226 Mass. 198, 203. If the vendor at any time before the conveyance to the defendants had tendered to the plaintiff such title as he had, and the offer had been declined, the question whether under such conditions specific performance would be decreed is not presented by the record.

The decree, being in conformity with the pleadings and report, must be affirmed with costs. If by reason of delay arising from the appeal some arithmetical changes may have become necessary as the plaintiff suggests, these questions can be settled before a single justice at the hearing on the decree after rescript.

*Ordered accordingly.*