WYBLE ET AL. *v.* McPHETERS ET AL.

TRUST.—*Gift Inter Vivos.*—A person delivered certain United States bonds and money to another, with directions for the latter to give the same to certain children of the former upon his death, and the person to whom said bonds and money were so delivered received them and agreed to execute the trust.

*Held,* that this was a sufficient delivery to constitute a gift *inter vivos,* and that, upon the death of the donor, an action would lie in favor of said children, against said trustee, upon his refusal to execute the trust, and against the administrator of the estate of the donor, to whom said trustee had delivered said bonds and money, it not appearing that the donation was void as against creditors..

PLEADING.—*Amended Complaint.—Clerk's Certificate.*—A complaint may be an amended one without appearing on its face to be such, and the certificate of the clerk that the complaint copied by him into the transcript of the record is an amended complaint is conclusive.

From the Washington Circuit Court.

*H. Heffren,* for appellants.

*T. L. & A. B. Collins,* for appellees.

WORDEN, J.—Complaint by the appellants against the appellees, as follows:

"Laura C. Wyble and Sallie M. McPheters complain of Benjamin Standish, administrator of Andrew A. McPheters, deceased, and William M. McPheters, and say that on the 1st day of September, 1873, Andrew A. McPheters departed this life, in Washington county, Indiana, intestate, leaving the plaintiffs, Laura C. Wyble and Sallie M. McPheters, two of his heirs; and that, on or about the 1st day of January, 1874, the defendant Benjamin Standish was duly appointed administrator of the estate of said decedent, by the Washington Circuit Court, and that he immediately qualified as such, and entered upon the discharge of the duties of his said trust, and ever since has been, and now is, acting in that capacity.

"And plaintiffs further say, that on or about the 1st day of January, 1872, the said decedent, who was then and there wholly solvent, and whose estate is now wholly solvent, was

the owner and in possession of certain personal property, to wit, three bonds of the United States of America for one thousand dollars each, one bond of the United States for five hundred dollars, and certain moneys amounting in all to five hundred and forty-five dollars, making a total of four thousand and forty-five dollars. That said decedent placed said money in separate wrappers, as follows: one endorsed ' For Sallie,' containing forty-five dollars, meaning thereby this plaintiff Sallie M. McPheters; in another wrapper he placed two hundred dollars, and endorsed it ' For Sallie M.,' meaning thereby this plaintiff Sallie M. McPheters; in another wrapper he placed three hundred dollars, and endorsed it ' A. A. McPheters, for Allie and Laura,' thereby meaning this plaintiff Laura C. Wyble and Allie Nugent, who had intermarried with F. R. Nugent. That he placed all of said packages aforesaid, together with the said United States bonds aforesaid, in a large envelope, and safely and securely sealed the same, and endorsed thereon, in substance, ' A. A. McPheters, for Laura, Sallie and Allie,' meaning the plaintiffs, Laura C. Wyble and Sallie M. McPheters, and Allie Nugent, who since said time of said endorsement thereon deceased before the said Andrew A. McPheters. That said Andrew A. McPheters in his lifetime and long before the death of said Allie, gave the said package to the defendant William M. McPheters, and told him the contents of the same, and that the same was for his children, Laura C. Wyble, Sallie M. McPheters and Allie Nugent, and instructed and directed said William M. McPheters, in case of his, Andrew A. McPheters', death, to open said package and give the contents as therein directed to these plaintiffs and Allie Nugent, which the defendant William M. McPheters then and there received in trust for these plaintiffs and Allie Nugent, and agreed to deliver to these plaintiffs and Allie Nugent after the death of said Andrew A. McPheters. That, on or about the 1st day of July, 1873, the said Allie Nugent deceased, and prior to the decease of Andrew A. McPheters. That, after the death of said Allie Nugent, the said Andrew A.

McPheters went and saw the defendant William M. McPheters, and conversed with him in regard to said package, only a short time before his, Andrew A.'s, death, and then told him, William M., that said package in his possession contained money and bonds which he, Andrew A., gave into his care, and told him it was money and bonds to be given to his daughters, Laura C. Wyble and Sallie M. McPheters, at his death, and that it was an absolute gift for his said daughters, and was for these plaintiffs, for their sole use and benefit. That said William M. McPheters, still acting as trustee, repeatedly agreed so to do. That the decedent, in his lifetime, wholly set apart the said sum of four thousand and forty-five dollars, for the sole use and benefit of these plaintiffs, and it was a gift to them, and he had no further control over the same, and appointed said William M. as trustee, to carry into effect the trust reposed in him at said Andrew A.'s decease. That said William M. McPheters had said package, containing said bonds and money, in his possession at the time of the said Andrew A.'s death, and the said Andrew never gave any other directions about said package than those aforesaid. That since the decease of said Andrew A., these plaintiffs have demanded of the defendant William M. McPheters said package, which he has wholly refused to deliver to them, and still refuses to do, thereby disregarding the plain directions and instructions of the decedent, and disregarding his own duty in the premises, and violating the trust reposed in him by said decedent, Andrew A. McPheters. Plaintiffs aver that, instead of regarding his trust and doing his duty in the premises, as he agreed to do with the said Andrew A., he has conspired with his co-defendant, Benjamin Standish, administrator as aforesaid, to defraud these plaintiffs out of said money and bonds, and, although often requested to deliver the same to them, he refuses so to do, but, without any right and against the objections and protestations of these plaintiffs, has delivered the same to Benjamin Standish administrator as aforesaid, and that said administrator is now about to mingle the said prop-

erty aforesaid with the other assets of the said estate of the said decedent, and to use and dispose of the same as he does of other property coming to his hands of said estate, to the great damage of the plaintiffs. Wherefore, in consideration of the matters and premises herein set forth, the plaintiffs ask for an order of this court directing and commanding the said administrator to deliver said property to the plaintiffs, and in case the same has been mingled with the assets of said estate so the same cannot be identified, they demand judgment against said defendant McPheters for ten thousand dollars, the value of said property, and for any other and proper relief to which they may be entitled in the premises.

" 2. Plaintiffs, further complaining of the defendants, say that on or about the 1st day of July, 1873, at the county of Washington, and State of Indiana, Andrew A. McPheters then and there placed in the hands of William M. McPheters three bonds of the United States of America of the denomination of one thousand dollars each, and one other bond of the United States of America for five hundred dollars, and money to the amount of five hundred and forty-five dollars, for the use and benefit of plaintiffs; that said William M. McPheters received the same, and agreed with the said Andrew to give the said bonds and money to these plaintiffs, upon the death of said Andrew A. McPheters; that said Andrew A. deceased about September 1st, 1873, at Washington county, Indiana; that these plaintiffs have frequently and repeatedly, since the death of said Andrew A., demanded of said William M. McPheters, defendant herein, the said bonds and money, which he wholly refuses to deliver. Plaintiffs further aver that on or about January 1st, 1874, one Benjamin Standish was duly appointed administrator of the estate of said Andrew A. McPheters, and was duly qualified and immediately entered upon the discharge of his trust, and still continues so to do; and that said defendant William M. McPheters, fraudulently conspiring with said Benjamin as administrator to defraud these plaintiffs out of said money and bonds, delivered the

same to the said Standish as administrator as aforesaid, without right; that said one-thousand-dollar bonds were of the value of one thousand two hundred dollars each, the five-hundred-dollar bond of the value of six hundred dollars; that said William M. McPheters received the same, together with the five hundred and forty-five dollars aforesaid, for the use and benefit of these plaintiffs, and, although often requested to pay over to plaintiffs said bonds and money, wholly fails and refuses so to do; wherefore plaintiffs demand judgment for ten thousand dollars, and any other and proper relief to which they may be entitled."

The defendants demurred to each paragraph of the complaint, for want of sufficient facts, and the demurrer was sustained, the plaintiffs excepting. Final judgment for the defendants.

The error assigned brings in review the ruling on the demurrer.

It is claimed by the appellees that each paragraph of the complaint was bad, because there was no complete delivery of the money and bonds, and, therefore, that the gift cannot be sustained as a gift *inter vivos* or *causa mortis*. We, however, are of a different opinion. It appears in the first paragraph that the money and bonds were, in the lifetime of Andrew A. McPheters, by him delivered to the defendant William M. McPheters, with directions to deliver the same to the plaintiffs and said Allie, deceased, upon the death of him, the said Andrew A., and that said William M. received the same and agreed to execute the trust thus reposed in him. There was a sufficient delivery to constitute a valid gift *inter vivos*. The delivery to William M. McPheters was absolute, unconditional. The subject of the gift was to be unconditionally delivered by him to the plaintiffs (and said "Allie") upon the death of Andrew A., an event which must at some time have taken place. The latter delivery was to depend upon no condition; the time thereof only was uncertain. The second paragraph was equally good. The transaction created the relation of trustee and beneficiaries

between William M. McPheters and the plaintiffs. See
/ *Miller* v. *Billingsly*, 41 Ind. 489.   A delivery to a trustee for
the use of the party to be benefited is as effectual as a deliv-
ery to the party himself, as will be seen by the authorities
hereinafter cited.

In the case of *Miller* v. *Billingsly*, above cited, Baily S.
Hays gave to Miller a certain draft, out of the proceeds of
which Miller was to pay Billingsly five hundred dollars.
This was a gift from Hays to Billingsly.   It was held that
Miller became a trustee for Billingsly, and that the latter
could recover the money from the former.   This assumes
that the delivery to the trustee was a sufficient delivery to
make the gift valid.

In *Stone* v. *Hackett*, 12 Gray, 227, it was held, that "a
delivery, without consideration, of shares in railroad corpo-
rations, with blank assignments endorsed thereon, upon
trust to pay the income to the settler for life, and at his
death to transfer the shares to certain charitable objects (the
settler reserving the right to modify the uses, or revoke the
trust), is valid, and would be upheld in equity against the
settler's widow, claiming the share which the law allows her
in property of which he died possessed."

We quote a paragraph from the opinion in that case, as
containing what seems to be a correct summary of the law
on the subject.   The court said:

"The key to the solution of the question raised in this
case is to be found in the equitable principle, now well
established and uniformly acted on by courts of chancery,
that a voluntary gift or conveyance of property in trust,
when fully completed and executed, will be regarded as
valid, and its provisions will be enforced and carried into
effect against all persons except creditors or *bona fide* pur-
chasers without notice.   It is certainly true that a court of
equity will lend no assistance towards perfecting a voluntary
contract or agreement for the creation of a trust, nor regard
it as binding so long as it remains executory.   But it is
equally true that if such agreement or contract be executed

by a conveyance of property in trust, so that nothing remains to be done by the grantor or donor, to complete the transfer of title, the relation of trustee and *cestui que trust* is deemed to be established, and the equitable rights and interests arising out of the conveyance, though made without consideration, will be enforced in chancery."

The court, after citing some authorities, and particularly the late case of *Kekewich* v. *Manning,* 1 De G., M. & G. 176 (50 Eng. Ch.), in which most of the English authorities are considered, proceeded as follows:

"The application of the principle established by these authorities is entirely decisive of the rights and duties of the parties to this suit. The conveyance or transfer of the shares to the plaintiff in her capacity as trustee was full and complete and vested in her the legal title to the property. No further act was to be done by the original owner of the shares to consummate the plaintiff's title. As between the parties, the delivery of the certificates of stock, with the assignments of some of them, and the power of attorney to transfer the others, was equivalent to a complete executed transfer of the shares."

So, in the case here, the delivery of the money and bonds to William M. McPheters, for the purposes of the trust, was all that was necessary to vest the title in him as such trustee.

In the case of *Gardner* v. *Merritt,* 32 Md. 78, Susanna A. Merritt had, in her lifetime, deposited money in a bank to the credit of certain children. After her death, a question arose whether the money belonged to the estate of Susanna, or the children, who were her grandchildren. The court said:

"The question is, whether these moneys became, when deposited by the grandmother, perfected gifts to the grandchildren, to whose account she had deposited them, or whether they remained, after the deposits, the property of the grandmother—whether the gifts were perfected, or whether the facts manifest an intention to give in future—whether the

acts of making the deposits, under all the proof in the cause, divested the grandmother of her title to the moneys, and vested the same in the infants. * * * A gift is inoperative without delivery. To be valid, it 'can have no reference to the future, but must go into immediate and absolute effect. To the perfection of a parol gift of a chattel, delivery is essential, and without actual delivery no title passes.' *Nickerson* v. *Nickerson*, 28 Md. 332. The delivery may be to the donee, or trustee, or guardian acting for the donee, or to any bailee of the donee. All these conditions were met in this case. The money was delivered by the donor to the bank, as bailee of the infants, by the direction of the donor, that it should be entered to their credit in accounts standing open in their names."

Other cases similar to the above are *Millspaugh* v. *Putnam*, 16 Abb. Pr. 380; *Howard* v. *Savings Bank*, 40 Vt. 597; *Minor* v. *Rogers*, 40 Conn. 512.

In the latter case, it was held that a party having thus made a gift, by depositing money in bank for another, could not annul the transaction by withdrawing the money before it had been received by the donee.

In the case before us, we need not determine whether the donor, Andrew A. McPheters, could, in his lifetime, have annulled the transaction, as he does not appear to have attempted to do so. On this point, however, 1 Perry on Trusts, 2d ed., sec. 104, and notes, may be cited.

In the case above cited from Gray, it was held that the express reservation, by the donor, of the right to annul or revoke the trust, it not having been exercised, did not affect the trust. "A power," said the court, "of revocation is perfectly consistent with the creation of a valid trust. It does not, in any degree, affect the legal title to the property."

It may be observed that no question arises as to the share of Allie Nugent in the donation. The plaintiffs are entitled, on the case made by the complaint, to recover their shares, at all events, if not the whole, under the allegations of the

first paragraph. If the donation was void as against creditors, this does not appear on the face of the complaint.

For these reasons, we are of opinion that the court erred in sustaining the demurrers.

A point is made by the appellees, as to what complaint is in the record, and also what demurrer.

The record shows that a demurrer was filed and sustained to the complaint, and that the plaintiffs then filed an amended complaint, to which a demurrer was also filed and sustained. The complaint sent up does not, on its face, purport to be an amended complaint, but the clerk certifies that it is the amended complaint. We think a complaint may be an amended one without appearing on its face to be such, and that the certificate of the clerk is conclusive that the complaint sent up is the amended one. The demurrer sent up was filed on November 4th, 1874, and was addressed to each paragraph of the complaint, but not in terms to the amended complaint. The amended complaint, however, was filed November 3d, 1874, and, as the original complaint had been superseded by the amended one, the demurrer must have been addressed to the amended complaint, as that was the only one to be met by demurrer or answer. There is, evidently, nothing in this point of the appellees.

The judgment below is reversed, with costs, and the cause remanded for further proceedings, in accordance with this opinion.

Opinion filed November term, 1875; petition for a rehearing overruled May term, 1876.

