ALICE H. BONE *vs.* ARTEMAS H. HOLMES, executor.

ARTEMAS H. HOLMES, executor, *vs.* ALICE H. BONE.

SAME *vs.* BOSTON FIVE CENTS SAVINGS BANK, ALICE H. BONE, claimant.

Suffolk.    March 20, 1907. — May 15, 1907.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Gift. Bond. Assignment. Corporation,* Transfer of shares of stock. *Savings Bank. Evidence,* Admissions.

At the trial before a judge sitting without a jury of an action against an executor for conversion, in which the plaintiff contended that the defendant wrongfully was detaining a bond given to the plaintiff by the defendant's testate, there was evidence that the bond was payable to the defendant's testate and was transferable by an assignment duly indorsed thereon, that the defendant's testate made a proper assignment in writing on the bond and delivered it to the plaintiff, that it then was put in the safety deposit box of the defendant's testate marked as the property of the plaintiff and with the statement "This is here for safe

keeping," that it subsequently was transferred to a safety deposit box of the plaintiff and, on his giving up the box, again was transferred to the box of the defendant's testate where it was at the time of his death although in the meantime the plaintiff had procured another box of his own, and that there never had been any transfer of the bond on the books of the obligor. *Held*, that a finding for the plaintiff was warranted.

A gift of a bond, a share of the capital stock of a corporation and a savings bank deposit, subject to an agreement by the donee that the donor shall have the income from them during the donor's life, takes effect notwithstanding such reservation.

At the trial before a judge sitting without a jury of an action against an executor for conversion, in which the plaintiff contended that the defendant wrongfully detained a coupon bond which the defendant's testate had given to the plaintiff, there was evidence that the bond was payable to bearer, that the defendant's testate had handed the bond to the plaintiff with the words, "This is yours, but if you will cut off the coupons and give them to me during my life," that thereafter the bond at first was kept in the safety deposit box of the defendant's testate, but, when the plaintiff had such a box, was kept there, that on the day of his death the defendant's testate asked the plaintiff for the bond to sell to provide funds for a journey that they were to take together and the plaintiff gave him the bond, but, the defendant's testate finding he had sufficient other funds, returned the bond to the plaintiff, that, there being at that time some conversation between them as to who should have the bond in case they should die together, the defendant's testate at the plaintiff's suggestion wrote on the envelope containing it "This document is to be given to " the plaintiff " if he survives me, and in event of his death and mine at the same time, I wish this given to E.," and signed the statement, that, it then being necessary to hasten, the plaintiff, to save time, put the bond in the box of the defendant's testate, where it was found after his death. *Held*, that a finding for the plaintiff was warranted.

At the trial before a judge sitting without a jury of an action by an executor for conversion, in which the defendant contended that certain shares of the capital stock of a corporation, alleged by the plaintiff to have been converted by the defendant, were given to him by the plaintiff's testate, there was evidence that the plaintiff's testate filled out the blank form for transfer of the shares found on the back of the certificate, providing for transfer to the defendant, and de-livered the certificate to the defendant, that it was intended by the plaintiff's testate that he, the plaintiff's testate, should continue to receive the dividends during his life and such dividends were sent by the corporation to his bank and there deposited to his credit, that the certificate at first was put in a safety deposit box of the plaintiff's testate marked in his handwriting, "This is the property of " the defendant, " put here for safe keeping," but that later it was kept in the defendant's box. There also was evidence that at one time before the delivery of the certificate to the defendant the plaintiff's testate expressed an unwilling-ness to transfer and deliver the stock during his life to the defendant, but wished to retain it in his own control, as well as evidence of statements and con-duct of the plaintiff's testate inconsistent with an intention to make a complete gift to the defendant. The stock never was presented for transfer on the books of the corporation. *Held*, that a finding for the defendant was warranted.

Where, at a trial before a judge sitting without a jury, a material question was whether one before his death made a completed gift of a savings bank deposit, and there was evidence that the depositor wrote an order on the bank to pay

the amount of his deposit to the person claiming it and delivered to that person the pass book, at the same time stipulating that he, the depositor, should be allowed the interest during his life, that the pass book at first was kept in the depositor's safety deposit box, later in a box of the donee, and later still and until his death in the depositor's box, but the written order was always in the possession of the donee. *Held*, that, although there was evidence which would support a contrary finding, a finding that there was a completed gift was warranted.

Evidence of admissions of a party to an action by language and conduct is not conclusive but can be explained, and he can take a position inconsistent with that seeming to be indicated by such evidence.

, THREE ACTIONS tried together, the first and second being actions of tort and the third an action of contract. Writs in the Superior Court for the county of Suffolk dated September 12, 1905, September 11, 1905, and September 11, 1905, respectively.

The declaration in the first action alleged that the defendant converted one seven hundred dollar bond or certificate of the Tyler Street Day Nursery and one one thousand dollar bond of the Bangor and Aroostook Railroad, the property of the plaintiff.

The plaintiff in the first action was the defendant in the second, and the declaration alleged that the defendant had converted sixty shares of preferred capital stock of the American Sugar Refining Company, property of the plaintiff as executor of the will of Angie N. Allen.

The declaration in the third case alleged that the plaintiff was the executor of the will of Angie N. Allen, who at the time of her death had a deposit in the defendant bank, and that the defendant owed the plaintiff the amount of such deposit. The answer alleged that Alice H. Bone claimed the amount of the deposit by force of an assignment of the account made by Angie N. Allen in her lifetime, that the defendant held the amount subject to final judgment in the matter, and petitioned that Alice H. Bone be summoned in as claimant. The claimant appeared and alleged that Angie N. Allen in her lifetime delivered to her the bank book showing the deposit in the defendant bank and assigned to her the deposit.

There was a trial before *Hitchcock*, J., without a jury.

Alice H. Bone had lived with Angie N. Allen at her house and as her companion on a salary of $25 a month for the seventeen years preceding the latter's death. Their relations were

warm and affectionate. Miss Bone testified, " Mrs. Allen didn't consider that she paid me sufficient salary and she wanted to give me all she could to make up for it."

Mrs. Allen died on March 14, 1904, leaving a will dated February 18, 1898, and a codicil dated April 17, 1903, in which none of the properties which are the subject of this litigation are mentioned. The will gave Miss Bone the income on $18,000 for her life and directed that that legacy be preferred to all others, and gave to the executor the testatrix's house, an estate worth $25,000, and named him residuary legatee.

During her lifetime Mrs. Allen had given to Miss Bone, besides the properties which are the subjects of this litigation, three one thousand dollar coupon bonds and two certificates of stock worth $1,000 each, one of which was transferred by her to Miss Bone in due form on the books of the corporation. .

The evidence as to the Tyler Street Day Nursery bond was as follows:

The bond, which was in evidence, was transferable " by assignment duly endorsed " thereon, and it was provided that on surrender of the certificate, duly indorsed, to the treasurer of the company, a new certificate would be issued to the assignee. Mrs. Allen had told Miss Bone on one occasion that she was going to give her the certificate and asked Alfred Hemenway, Esquire, if he would come to her house and tell her how to sign and witness it. He did so on December 12, 1892, and, Miss Bone coming in later, Mrs. Allen handed it to her and said: " This is yours, and the income of it you will receive and you can do what you like with it, but if you think it would be a good thing we will have it for theatre tickets, we will buy theatre tickets and go together to the theatre with it." On the back of the bond was the following:

" Boston, Dec. 12, 1892.

" I, Angie N. Allen, hereby assign the within certificate to Alice H. Bone.

" Angie N. Allen.

" Attest: Alfred Hemenway."

The interest checks were payable to Mrs. Allen, who cashed them and gave the money to Miss Bone, who purchased with it theatre tickets for herself and Mrs. Allen.

The bond was placed in Mrs. Allen's safety deposit box in an envelope upon which was written "This is the property of Alice H. Bone and is here for safe keeping." Afterwards Miss Bone took a box of her own in the Bay State Trust Company, and the bond was taken from Mrs. Allen's box and put there. Miss Bone subsequently gave up that box, and the bond was put back in Mrs. Allen's box, where it was found after her death in an envelope marked "Sundries." There was no evidence that the bond and assignment had ever been presented to the company for transfer.

The evidence as to the bond of the Bangor and Aroostook Railroad was as follows :

Mrs. Allen some years before her death handed the bond to Miss Bone saying " This is yours, but if you will cut off the coupons and give them to me during my life." At the same time Mrs. Allen gave Miss Bone the receipt for the bond and told her at any time she wanted to sell it " to take it back to Mr. Arthur Stevens and he would buy it." Miss Bone testified on cross-examination :

" Q. Why should Mrs. Allen have any control over it if it was given to you absolutely ? A. Well, I don't know about law, of course. I did not understand it; she gave it to me, said it was mine, and when the coupons were paid she used to laugh when we went down ; she said, ' I want you to come and to cut off coupons.' I cut them off."

Other facts appearing from Miss Bone's testimony as to this bond were :

The bond was kept in Mrs. Allen's box at the Boston Safe Deposit and Trust Company until Miss Bone had a box of her own at the Bay State Trust in March, 1902, when it was put there. When she gave up that box in March, 1903, it was returned with other papers of Miss Bone's to Mrs. Allen's box. In November, 1903, Miss Bone took a box of her own at the Boston Safe Deposit and Trust Company, and she put the bond with other things of her own in there, where it stayed for six months, until the day that Mrs. Allen died. The day previous to that Mrs. Allen and Miss Bone had planned a trip abroad and Mrs. Allen had stated that she did not think she had enough money for a letter of credit and had asked Miss Bone " if she were willing to give "

her " the bond and sell it," saying that in the autumn she would buy another bond for Miss Bone and give her $1,000. Miss Bone assented and they went together to Miss Bone's safety deposit box, got the bond and then went to the New England Trust Company where Mrs. Allen asked for her balance and, learning that it was sufficient for the expenses of the proposed journey, told Miss Bone that she would not sell the bond. Mrs. Allen then felt ill and, on the two returning to the safety deposit vaults intending first to cut a coupon from a bond in Mrs. Allen's box and then to return the Bangor and Aroostook bond to Miss Bone's box, Miss Bone would not let Mrs. Allen remain long enough for the bond to be put in Miss Bone's box, but it was put in Mrs. Allen's box. That evening Mrs. Allen died.

The envelope containing the bond had written upon it the following : " This document is to be given to Alice H. Bone if she survives me, and in the event of her death and mine at the same time, I wish this given to Elizabeth A. Elliott, 16 Stevens Street, Winchester, Mass. Angie N. Allen, March 14, 1904." Miss Bone testified that this was written upon the envelope by Mrs. Allen on the day of her death and on the occasion just mentioned at Miss Bone's suggestion. " She said, ' Supposing, Alice, as we are going to Europe — supposing we should die together, would you like Miss Wardwell or Mrs. Elliot to have this? Which would you rather?' And I said, ' Mrs. Elliot'; and with that she wrote it on it.

" Q. Did you intend by anything that you said or Mrs. Allen wrote to give up any right that you previously had to the bond ? A. Certainly not. Mrs. Allen did not expect me to either."

There was found in Mrs. Allen's safety deposit box after her death a letter dated May 11, 1903, to her executor, in which she said among other things : " independent of the amount I gave her in my will I wish her to have the envelope with papers enclosed and addressed to her in my safety deposit box."

There were two certificates of the preferred stock of the American Sugar Refining Company, and Miss Bone testified that they were given to her on two different occasions. As to the first certificate, she testified that Mrs. Allen told her she was going to have one Hallett, who was her business adviser but not a lawyer, tell her, Mrs. Allen, how to give it to her, Miss

Bone, and they went to his office for that purpose on October 19, 1900. The blank on the back of the certificate was filled in on that day, excepting that the name of Hallett as attorney to transfer was not written in then. On that same day the certificate was handed to her by Mrs. Allen. "She said I could have the income of that to use while her estate was being settled, so that I would at no time be without an income."

"Q. Did you understand it was to be transferred as soon as she died? A. Yes.

"Q. Was that the agreement you understood Mrs. Allen to make? A. Yes.

"Q. What was the agreement as to dividends? A. That she would receive the dividends during her life."

According to instructions by Mrs. Allen, never revoked, the dividends on the Sugar stock were in fact always sent by the company to the New England Trust Company, where Mrs. Allen had a check account, to be deposited to Mrs. Allen's credit. The envelope containing the certificate was at the time of the gift put in Mrs. Allen's safety deposit box and remained there until March, 1902. On the 8th of February, 1901, Mrs. Allen gave to Miss Bone a note reading in part as follows: "I wish to tell you in writing, although I told you at the time I did it, that I have given you my Sugar Preferred stock (fifty shares). It is enclosed in an envelope addressed to you and deposited in the Boston Safe Deposit and Trust Co., No. 87 Milk St., in my box, and I wish you to have it to do as you please with." On October 19, 1901, Mrs. Allen wrote to Holmes a letter reading in part as follows: ". . . let me tell you right here something I have intended to tell you before; about twelve or thirteen years ago I bought with some money I had, some shares of Sugar stock, and I have the certificate in my safe deposit, when I die, I wish Alice to have it and I do not wish to bother about getting my will and putting it in it, and I do not wish to transfer it to her while I am alive for fear something might happen to her and I could not get it back. It is, as I said, in the safety deposit, in an envelope, and I have written on the back of it, 'This is the property of Alice H. Bone,' will she, dear Artemas, have it all right in case of my death. I have told her about it."

On the back of this certificate at the time of the trial appeared

the following, all in Mrs. Allen's name excepting the name of Hallett:

"For value received I hereby sell, assign, and transfer unto Alice H. Bone of Boston fifty shares of the capital stock represented by the within certificate, and hereby constitute and appoint Daniel B. Hallett attorney to transfer the said stock. Dated Oct. 19, 1900. Angie N. Allen. In the presence of Daniel B. Hallett."

Miss Bone testified that this was all written in at the time the certificate was handed to her by Mrs. Allen.

As to the interview at his office, Hallett testified: "Mrs. Allen came to my office and brought this certificate for fifty shares of stock. . . . She said she wished to make a gift to Miss Alice or Miss Bone. And I said, ' There are two ways in which I should advise you to have that done. The first would be that you could give it to her absolutely by filling in her name and let it stand, and let her transfer it, and then she to give you an order for the dividends on the stock.' And she said then, ' What position would I be in, supposing Miss Alice died ? ' I said, ' Then it would go to her heirs.' She said, ' Then I won't have that.' Then, ' What is the next condition ? ' ' The next is that you can sign it in blank and I will witness it, and if you put it in an envelope and mark on it, " The property of Miss Alice H. Bone," and date and your name, I should consider it a gift to her, and the only thing about it would be that you would require the assent of the executor or executors of your estate.' She said, ' Well, that is all right. Mr. Holmes is one of my executors and he will do as I request him to do.' . . . At that time there was no writing on the back of the certificate except Mrs. Allen's name and my own as witness. I neglected to put in the date. She put that in an envelope which I gave her, and wrote as I suggested."

Both Hallett and Miss Bone testified that the occurrences as stated by them respectively regarding the first certificate were, on January 17, 1902, repeated as to the second. On the back of the second certificate, all in Mrs. Allen's handwriting except Hallett's signature as witness, was the following which Miss Bone testified was all there when the certificate was given to her by Mrs. Allen:

" For value received I hereby sell, assign, and transfer unto Alice H. Bone ten shares of the capital stock represented by the within certificate, and do hereby irrevocably constitute and appoint Daniel B. Hallett attorney to transfer the said stock on the books of the within named Company with full power of substitution in the premises. Dated Jan. 17, 1902. Angie N. Allen. In the presence of D. B. Hallett."

As to the second certificate Miss Bone testified : " Mrs. Allen was to have the income of it during her lifetime. Mr. Hallett was to transfer it to me after her death so that I could have the income of it immediately and not wait for the settling of the estate."

She further testified that in March, 1902, she hired a safety deposit box of her own, and that the two certificates were put into it and remained there till March, 1903, when she gave up this box, and they were then again put into Mrs. Allen's box with a slip of paper pinned on, on which was written in Mrs. Allen's handwriting, " This is the property of Alice H. Bone, put here for safe keeping." This paper was in evidence.

On May 11, 1903, Mrs. Allen wrote her executor a letter the opening sentence of which is " Independent of the amount I have given her in my will, I wish the sixty shares of Sugar stock that I own given to her, and the certificate of which [is] in my safety deposit box."

In November, 1903, Miss Bone took a new box, and the certificates were transferred to it with certain other securities of her own, and remained there during the rest of Mrs. Allen's lifetime, but the dividends continued to be paid to Mrs. Allen's account at her bank even after Mrs. Allen's death. Miss Bone wrote several times to the executor and in one letter said : " I am writing to ask you if it will be agreeable to you to let me have the dividends of the Sugar stock for April and July for my immediate expenses. When Mrs. Allen gave me this stock several years ago it was her wish and intention that in case of her death it would be transferred to me at once so that I should receive the interest as soon as possible. I have had many expenses since Mrs. Allen died and need the money very much." She also testified that until some months after Mrs. Allen's death she did not consult counsel and that previous to such con-

sultation she knew nothing of the law as to gifts or wills and was ignorant of the process necessary to establish her rights to stock standing in Mrs. Allen's name; that after consulting counsel she made claim by her counsel to all the properties in litigation here.

The evidence as to the deposit in the Boston Five Cents Savings Bank was that at some time before November 1, 1903, Mrs. Allen handed to Miss Bone the bank's pass book as to this deposit and said : " This is yours. I give this to you, but I should like to have the income of it during my life." On November 13, 1903, Mrs. Allen wrote out and delivered to Miss Bone the following :

" 220 Beacon St., Boston, Nov. 13, 1903.

" To the Treasurer of the Five Cents Savings Bank, Boston.

" Pay to Alice H. Bone or order all the moneys that have been or may become due on account of Book 274428.

"Angie N. Allen."

The pass book was at first put into Mrs. Allen's safety deposit box, later into Miss Bone's, and later again into Mrs. Allen's, where it was at the time of her death, Miss Bone testifying, " When I took a box in November, 1903, I declined to take the bank book, because Mrs. Allen drew the interest, and I thought it more convenient for her to keep them in her own box."

The assignment was always in Miss Bone's possession and was not presented to the bank until after Mrs. Allen's death.

In a letter to the executor, written March 19, 1904, in response to one from him inquiring for certain information for the purpose of making an inventory of Mrs. Allen's estate, Miss Bone stated, as one item in a schedule, " Mrs. Allen's cash in Five Cents Savings Bank, $100.00."

There were some exceptions by Miss Bone as to the admission of evidence.

The presiding judge sustained the claim of Miss Bone in each case, found for the plaintiff in the first case, for the claimant in the second and for the defendant in the third. The executor of the will of Angie N. Allen excepted.

*W. W. Vaughan,* (*H. G. Vaughan* with him,) for the executor.

*C. L. Bremer,* for Alice H. Bone.

SHELDON, J.  We are of opinion that there was evidence which warranted the finding in each of these cases.

1. There was evidence that Mrs. Allen executed a formal assignment of the Tyler Street Day Nursery bond to Miss Bone, and delivered the bond and the assignment to her ; that it was then put in Mrs. Allen's box in a safety vault for safe keeping, marked, " This is the property of Alice H. Bone, and is here for safe keeping " ; that Miss Bone afterwards took a box of her own, and put the bond in that for a time, until she gave up that box and put the bond back in Mrs. Allen's box, where it remained until the latter's death.  On this evidence the court had a right to find that there had been a sufficient delivery of the bond to Miss Bone, with intent to pass the title.  The fact that the bond was found in Mrs. Allen's box after her death was of course to be considered ; but it was not necessarily decisive.  *Scrivens* v. *North Easton Savings Bank*, 166 Mass. 255.  The same may be said of the fact that the assignment had not been presented to the obligor or the bond transferred upon its books.  *Andrews* v. *Worcester, Nashua & Rochester Railroad*, 159 Mass. 64.  And the talk at the time of the delivery of the bond and assignment to Miss Bone did not amount to a reservation of the interest during Mrs. Allen's life, nor would such a reservation have conclusively avoided the gift.  *Stone* v. *Hackett*, 12 Gray, 227.  *Davis* v. *Ney*, 125 Mass. 590.  *Tyndale* v. *Randall*, 154 Mass. 103.  *Bromley* v. *Mitchell*, 155 Mass. 509.

As to the bond of the Bangor and Aroostook Railroad Company there was evidence that Mrs. Allen, some years before her death, handed it to Miss Bone, saying, " This is yours, but if you will cut off the coupons and give them to me during my life." This warranted a finding that the property passed absolutely to the donee, and such a reservation of the interest for the life of the donor would not prevent the gift from taking effect.  See the cases cited above.  The donor trusted the donee to give back the coupons as they should become due.  Nor did the testimony as to the subsequent custody of the bond or the direction afterwards written by Mrs. Allen upon the envelope containing it necessarily show that there had been no previous delivery of the bond and vesting of the title, subject to a qualified reservation of the interest, in the donee.  *Kendrick* v. *Ray*, 173 Mass. 305,

308, 309. *Chase* v. *Perley*, 148 Mass. 289. *Scott* v. *Berkshire County Savings Bank*, 140 Mass. 157. We do not mean to say that this evidence, under the circumstances of the case, was inadmissible, or that with the other evidence it might not have warranted a different finding from that which was made; but we cannot pass upon the weight of the evidence.

2. As to the sixty shares of Sugar preferred stock which are the subject of the second suit, the facts which might be found do not differ essentially from those which have been stated in considering the first suit. The stock was not transferred on the books of the corporation, and it was intended that the dividends should be paid to Mrs. Allen for her life. But we have already seen that these circumstances are not conclusive against Miss Bone's contention that as between the parties there was an absolute transfer of the title to her.

The executor relied strongly on the evidence that Mrs. Allen expressed at one time an unwillingness to transfer and deliver the stock during her own life to Miss Bone, but wished to retain it in her own control and allow the title to pass only after her own death, which would make the inference of a present gift taking effect during the life of the donor impossible. *Duryea* v. *Harvey*, 183 Mass. 429, 433. *Coleman* v. *Parker*, 114 Mass. 30, 32. *Stone* v. *Hackett*, 12 Gray, 227. But there was also evidence that subsequently Mrs. Allen wrote Miss Bone's name as transferee into the blank assignment and delivered the certificates to Miss Bone, and that they remained in the latter's exclusive possession for a year, when they were put into Mrs. Allen's box, with a paper pinned upon them, reading in Mrs. Allen's handwriting: " This is the property of Alice H. Bone, put here for safe keeping." The court had a right on this evidence to find that the gift which Mrs. Allen intended to make to Miss Bone had been carried into effect by an absolute delivery. *Andrews* v. *Worcester, Nashua & Rochester Railroad*, 159 Mass. 64. The evidence of statements by and conduct of Mrs. Allen inconsistent with such a finding simply presented a question of fact which was passed upon at the trial.

3. The questions raised in the third suit, brought to recover the deposit in the Boston Five Cents Savings Bank, are sufficiently disposed of by what has been said. The judge had the

right to find that there had been a completed and absolute gift and delivery of the bank book made by Mrs. Allen to Miss Bone, and to sustain the latter's claim to the deposit. *Peck* v. *Scofield,* 186 Mass. 108. *Debinson* v. *Emmons,* 158 Mass. 592. *Eastman* v. *Woronoco Savings Bank,* 136 Mass. 208. *Pierce* v. *Boston Five Cents Savings Bank,* 129 Mass. 425. The mere fact that there was also evidence which would have warranted a different finding is not for us to consider. *McMahon* v. *Lawler,* 190 Mass. 343.

It may well be, as contended by the executor, that if there had been here no completed and absolute gift the attempted dispositions could not have been sustained by treating them as declarations of trust ; but that question does not arise, and his claim that Miss Bone is absolutely bound by admissions to be inferred from her language and conduct, and cannot explain these away or stand upon any ground inconsistent with them, is not to be supported. *Baldy* v. *Stratton,* 11 Penn. St. 316.

It is not necessary to consider the exceptions saved by Miss Bone.

In each case the entry must be

*Exceptions overruled.*