## Grant Trust and Savings Company, Administrator, *v.* Tucker.

[No. 7,609. Filed November 17, 1911. Rehearing denied February 2, 1912.]

1. Gifts.—*Delivery.*—*Escrow.*—*Agency.*—*Death.*—To make a valid gift *inter vivos* the article given must be unconditionally delivered to the donee, his agent, or in escrow for such donee; but if such third person be merely the agent of the donor, such donor's death revokes the agent's authority and the gift is defeated. p. 350.
2. Gifts.—*Delivery.*—*Banks.*—*Bonds.*—Where bonds are delivered unconditionally to a bank to be delivered to the donee, the present title to the bonds passes to the donee; but where the delivery is such that the donor retains the power of final disposition, the gift does not take effect. p. 351.

3. GIFTS.—*Escrow.*—*Evidence.*—Whether an intended gift actually became effective is a question of fact to be determined from all the circumstances.  p. 352.

4. GIFTS.—*Ambiguous Language Used in Making.*—*Conduct of Parties.*—Where the language of a donor in making an alleged gift is ambiguous, the practical interpretation given by the parties and acted upon is given great weight in determining whether a gift was actually made.  p. 352.

5. GIFTS.—*Enjoyment.*—*Postponement.*—*Reservation of Income.*— The fact that a donor postpones the donee's enjoyment of a gift until the donor's death, or that the donor reserves the income from his gift during his life, does not invalidate such gift.  p. 352.

6. TRIAL.—*Conclusions of Law.*—*Exceptions.*—Exceptions to the conclusions of law admit, for the purposes of such exceptions, that the facts are correctly found.  p. 353.

7. GIFTS.—*Trustees for Donor and Donee.*—*Bonds.*—*Interest.*—A donor may unconditionally deliver bonds to a trustee to be delivered to the donee, and may retain the right to collect and use the income therefrom during his life, thus making such trustee the agent of the donee for the delivery of the bonds, and the donor's agent for the collection of the income thereof.  p. 353.

8. GIFTS.—*Bonds.*—*Reservation of Income.*—*Evidence.*—Evidence that a donor delivered to a certain bank certain bonds enclosed in an envelope dated and marked "in case of my death deliver to" the donee, who was his niece, that at subsequent times he delivered other bonds to be placed in such envelope with the same instructions, that he clipped and used the coupons therefrom as they became due, that on numerous occasions he disclaimed ownership of such bonds, asserting that they were the property of the donee, that he exercised no control over them, though at times he was given physical possession thereof, treating them at all times as the property of the donee, sustains a decision that the title to such bonds passed to the donee and that, at his death, she was entitled to such bonds.  p. 353.

9. TRUSTS.—*Creation of.*—*Revocation.*—No particular words are required to create a trust; and where a trust has in fact been created, it cannot be revoked by the donor without the consent of the beneficiary.  p. 354.

10. GIFTS.—*Trusts.*—*Acceptance.*—*Presumptions.*—The acceptance of a beneficial gift is presumed, unless the evidence shows otherwise.  p. 354.

From Grant Circuit Court; *H. J. Paulus*, Judge.

Action by Cora M. Tucker against the Grant Trust and Savings Company, as administrator of the estate of Harvey

S. Mark, deceased. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Field W. Sweezy, Robert M. Van Atta* and *Condo & Browne,* for appellant.

*Brownlee & Cline* and *Miller, Shirley & Miller,* for appellee.

FELT, P. J.—It appears from the special finding of facts that appellant's decedent, Harvey S. Mark, was on April 7, 1899, the owner of certain United States bonds; that on and prior to said date said bonds had been enclosed in an envelope and left for safe keeping in the vault of the Marion Bank, of the city of Marion, Indiana; that on that day decedent wrote upon said envelope as follows:

"April 7, 1899. In case of my death deliver to Cora Breed. H. S. Mark,"

and delivered the package to said bank, and it was placed in its vault; that thereafter said Mark procured additional government bonds, and in each instance he directed George Webster, Jr., who was cashier of said bank, to place said bonds in the envelope with the bonds already placed therein, to which he referred as "Cora's other bonds;" that said Webster on such occasions asked him if he desired to continue his previous instructions, to which he replied, in substance, that he did, and on each occasion, at his direction, said cashier indorsed on said envelope the following:

"May 5, 1905. Renewed this instruction.
                                G. W., Jr.
May 9, 1906. This instruction continued.
                                G. W., Jr.
February 14, 1908. This instruction continued.
                                G. W., Jr."

That all bonds placed in said envelope on April 7, 1899, and those subsequently placed therein, remained continuously in the vault of said Marion Bank and its successor, Marion State Bank, until after the death of said Mark,

which occurred on April 1, 1908, with the exception that on one occasion at Mark's request said cashier forwarded to Washington a portion of said registered bonds, to have an error in the use of the name "Marks" instead of "Mark" corrected; that after such correction had been made the bonds were returned directly to the bank, and again placed in the envelope so indorsed as aforesaid; that the unregistered coupon bonds, placed in said envelope, amounted to $15,500, and the registered bonds amounted to $12,500, all of the value of $28,000; that the vault in which said package containing said bonds was kept was at all times under the exclusive control of the officers of said bank, and was used by them for the safe-keeping of the funds and valuable papers of the bank, and also the papers of its customers; that said Mark never knew the combination to the safe, or had any means of access to said vault; that said Webster acted as cashier of said banks during all the time said bonds were so held by them, and, at the request of said Mark, when each quarterly instalment of interest fell due on the bonds he detached the interest coupons, and they were by decedent deposited to his own credit in the bank; that on one occasion he caused the cashier to place in said envelope a sum of money, and subsequently called for and received it; that after April 7, 1899, on divers occasions and to numerous persons, including Richard E. Breed, then the husband of appellee, and to other close friends and business acquaintances of said Mark, the decedent, in substance, stated that he had given the bonds in question to "Cora" (meaning appellee), and that the bonds belonged to "Cora;" that about two years before his death he rented a private box in a safety deposit vault of another bank in Marion, Indiana, and thereafter, until his death, used it as a receptacle for his personal papers, including one or more government bonds; that when asked to bring his bonds from the Marion State Bank and place them in his private box, he stated that "those are

Cora's bonds, and I will not mix them with my own bonds,"
that he had given those bonds to "Cora;" that on other
occasions he stated he had given the bonds to "Cora" be-
cause she was entitled to them, and had helped him make his
money; that he was asked to deposit those bonds with a
United States depositary, and get two per cent interest
thereon, but he declined so to do, saying, "those bonds are
Cora's," meaning appellee; that said Mark on different oc-
casions, while the bonds were in the keeping of the bank,
stated to Richard E. Breed, then the husband of appellee,
that he had deposited the bonds with said bank for "Cora,"
but that he had reserved the interest during his lifetime;
that when requested by said Breed to use the bonds in pur-
chasing real estate, he replied that the bonds did not belong
to him, and that if he should make an arrangement to ex-
change them for the real estate he could not put the real
estate under the same conditions that the bonds were without
making an absolute deed; that he had given the bonds to
appellee, but had placed them in the bank so they would be
easily accessible for the clipping of the coupons from which
he derived enough money to live on; that he did not at any
time after April 7, 1899, assert ownership of said bonds, or
seek to regain possession or control of them; that he was
seventy-five years old at the time of his death; that appellee
was his niece, had clerked in his store, and had been for
many years the special object of his favor and bounty; that
when he so indorsed said envelope and delivered it to the
bank, as aforesaid, he intended to give and did give said
bonds to appellee, who was then Cora Breed, and in each
instance vested in her a present interest in the bonds so
placed in said envelope, subject only to his right to the in-
terest thereon during his lifetime; that the bonds so deliv-
ered to said bank were by it to be held in trust for appellee
until the death of said Mark, and were then to be delivered
to appellee; that on December 20, 1904, said cashier deliv-

ered to said Mark, at his request, an unsigned memorandum
or list of the bonds in said envelope, headed

"List of three per cent government bonds owned
by H. S. Mark, and left at Marion Bank for safe-
keeping only;"

that such was the usual heading used in such receipts, and
was given to distinguish said envelope from packages and
papers belonging to the bank, or held by it as collateral; that
said memorandum was made without any suggestion from
Mr. Mark, or any question as to their ownership, and was to
show that the bonds did not belong to the bank.

The court also found facts showing the change in the or-
ganization of the bank and the divorce of appellee from her
former husband, Breed, but no controversy arises in regard
to either of such facts.

Upon the foregoing finding the court stated its conclu-
sions of law as follows: (1) That Harvey S. Mark, in his
lifetime, made an absolute gift of the bonds in question to
appellee, reserving to himself the income thereof during his
natural life; that appellee is the absolute owner and entitled
to the possession of all said bonds; (2) that appellant has no
interest in said bonds, and at the death of said Mark held
possession thereof as trustee for appellee, and in no other
capacity, which bonds, on the death of said Mark, were to
be delivered to appellee.

It is conceded that appellant's decedent intended to give
the bonds in question to appellee, but counsel assert that he
failed so to execute the gift in his lifetime by delivering the
bonds, and thus did not meet the requirements of the law
and perfect the intended gift.

It is the law in this State that to make a valid gift *inter
vivos,* it is essential that the article given be unconditionally
delivered in the lifetime of the donor to the donee
1.  or to some third person for the use and benefit of the
intended donee. If, however, such third person be

only the agent of the donor, the death of the latter revokes the authority of the agent, and the gift is defeated. *Smith* v. *Ferguson* (1883), 90 Ind. 229, 46 Am. Rep. 216; *Martin* v. *McCullough* (1894), 136 Ind. 331, 338; *Bingham* v. *Stage* (1890), 123 Ind. 281, 286; *Devol* v. *Dye* (1890), 123 Ind. 321, 326, 7 L. R. A. 439; *Goelz* v. *People's Sav. Bank* (1903), 31 Ind. App. 67.

Appellant contends that the decedent never parted with the control of or title to the bonds in his lifetime, and that all he did was to express a definite intention to give the bonds to appellee and appoint the bank his agent to execute such intention after his death; that appellee did not in the lifetime of the donor acquire any present interest in the bonds; that control thereof did not pass to appellee or any one acting as trustee for her, beyond the power of revocation by the donor at any time during his lifetime.

If this contention can be sustained, appellant should prevail. In this case the delivery to the bank is unquestioned. But the dispute is waged as to whether the writing on the envelope containing the bonds, and whether the other things said and done in relation thereto, show the bank to be only an agent of the donor, with directions to complete an unexecuted gift upon the happening of some future event, or a trustee holding property for the donee, the control and title to which has been surrendered by the donor to the donee, subject only to conditions not inconsistent with the passing of an absolute and present interest.

If the property remained under the control of the donor, though in the keeping of the bank, and the bank was subject to his further direction as to its final disposition, then 2. its relation was that of an agent. If, however, the bonds were delivered to the bank by the donor, with the intention that the present title and ownership should pass to the donee, subject only to the donor's right to the accruing interest thereon during his lifetime, and such intention was carried into effect by the language employed and

the things done in relation thereto, then the gift was executed, and the bank became and was a trustee for the donee. 2 Pomeroy, Eq. Jurisp. (2d ed.) §1009; *Green* v. *McCord* (1903), 30 Ind. App. 470; *Copeland* v. *Summers* (1894), 138 Ind. 219, 224; *Wyble* v. *McPheters* (1876), 52 Ind. 393, 397; *Martin* v. *McCullough, supra.*

The ultimate question as to whether the bank occupied the position of agent or trustee is one of fact to be determined from the intentions of the donor, the writing

3. on the envelope containing the bonds, the situation and relation of the parties, the kind and character of the property, and the things said and done in regard thereto, all as disclosed by the evidence. *Gaylord* v. *City of La-Fayette* (1888), 115 Ind. 423, 430; *Green* v. *McCord* (1903), 30 Ind. App. 470; *Goelz* v. *People's Sav. Bank, supra,* at page 74; *Caylor* v. *Caylor* (1899), 22 Ind. App. 666, 72 Am. St. 331; *Devol* v. *Dye, supra.*

Where the language employed by the donor is indefinite, incomplete or ambiguous, and subject to different constructions, the practical interpretation given to it by the

4. parties themselves, in carrying into effect their purposes, is entitled to great weight, and in many cases is controlling. *Gaylord* v. *City of LaFayette, supra.*

The fact that the enjoyment of a gift is deferred until the donor's death, or that the earnings of the property given are reserved to the donor during his lifetime, will not de-

5. feat a gift otherwise valid. *Wyble* v. *McPheters, supra; Jacobs* v. *Golley* (1902), 29 Ind. App. 25; *McNally* v. *McAndrew* (1897), 98 Wis. 62, 65, 73 N. W. 315; *Bone* v. *Holmes* (1907), 195 Mass. 495, 505, 81 N. E. 290; *Goodrich* v. *Rulland Sav. Bank* (1908), 81 Vt. 147, 69 Atl. 651, 17 L. R. A. (N. S.) 181.

In this case the principal controversy relates to the control of the bonds during the lifetime of the donor, after placing them in the keeping of the bank.

Appellant contends that the facts show that the bonds

remained subject to the control of the donor, and that the conclusions of the court are therefore erroneous.

An exception to the conclusions of law admits, for the purposes of the exceptions, that the facts have been fully and correctly found. *Conner* v. *Andrews Land, etc., Co.* 6. (1904), 162 Ind. 338; *Blair* v. *Curry* (1898), 150 Ind. 99; *City of Indianapolis* v. *Board of Church Extension* (1902), 28 Ind. App. 319; *Indiana, etc., R. Co.* v. *Doremeyer* (1898), 20 Ind. App. 605, 67 Am. St. 264.

The fact that the bonds were under the control of the decedent, to the extent of enabling him to obtain the interest coupons as they matured, is not inconsistent with 7. the idea that the bank held the bonds as trustee for appellee, but only tends to show that the bank was also trustee for the donor, for the purpose of securing to him the interest during his lifetime. If he desired to retain the bonds for the purpose of receiving the interest during his lifetime, appellee to receive the bonds, with interest thereon, after his death, the bank could consistently act as trustee for both donor and donee for the accomplishment of the ends in view.

The contention that there is evidence proving that the donor had the bonds in his possession after they were delivered to the bank is not conclusive on the proposition, 8. for there is other evidence showing that the bonds were at all times under the absolute control and in the keeping of the bank, and that on divers occasions the donor refused to attempt to disturb them, and gave as his reason that he had given the bonds to appellee, and would not mix them with his own property. Even if the evidence was uncontroverted, as it is not, that the donor had the bonds temporarily in his possession after delivering them to the bank, it at most would only be a fact tending to show that the gift was not executed in his lifetime, but would not be conclusive upon the proposition. The same is true of

the memorandum given the donor by the cashier of the bank, and of other items of evidence relied upon by appellant. That the physical possession of the bonds was with the bank is not disputed, except as before indicated, but the character of that possession is a subject of sharp controversy. This controversy can only be settled by a consideration of the evidence, from which the court found that the bank held the bonds as trustee for appellee, and this conclusion appellant asserts is erroneous.

We think, however, that the several indorsements on the envelope containing the bonds, the conduct and the statements of the donor at the time of and subsequent to the making thereof, afford some evidence from which the court may have consistently found that the donor not only intended to give the bonds to appellee, but that he did unconditionally part with the control and ownership thereof, save and except the right to the accruing interest during his lifetime.

Considering the relations of the parties, the things done, and the statements made and reiterated by the donor, the court was warranted in the conclusions reached. In 9. fact, the after-conduct of the donor was consistent with an executed gift. The law does not require the use of any particular language in appointing a trustee, and when a trusteeship has in fact been created, the donor cannot set it aside without the consent of the beneficiary of the trust. *Ewing* v. *Jones* (1892), 130 Ind. 247, 15 L. R. A. 75; *Haxton* v. *McClaren* (1892), 132 Ind. 235, 240; *Wyble* v. *McPheters, supra; Green* v. *McCord, supra.*

The gift being beneficial to appellee, her acceptance is presumed until such presumption is removed, and nothing appearing to remove the presumption, it is conclu- 10. sive for the purposes of this case. *Devol* v. *Dye, supra,* at page 329; *Dunlap* v. *Dunlap* (1892), 94 Mich. 11. 53 N. W. 788; *Beaver* v. *Beaver* (1889), 117 N. Y.

421, 22 N. E. 940, 6 L. R. A. 403, 15 Am. St. 531; 14 Am. and Eng. Ency. Law (2d ed.) 1028.

The questions raised by the motion for a new trial do not require consideration here, further than to state that they fail to present any error harmful to appellant. *Devol* v. *Dye, supra,* at page 328.

The trial court was fully warranted in the conclusions reached, and the judgment is therefore affirmed.